**Erma DATES, Plaintiff,**

v.

**PHELPS DODGE MAGNET WIRE CO., Defendant.**

**Civ. No. F 81–60.**

United States District Court, N.D. Indiana, Fort Wayne Division.

March 2, 1984.

---

Solomon L. Lowenstein, Jr., Fort Wayne, Ind., for plaintiff.

James S. Haramy and Kim Ebert; King, Downing & Haramy, Indianapolis, Ind., Daniel R. Gordon, Bluffton, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the "Motion for Summary Judgment" filed by defendant Phelps Dodge Magnet Wire Co. with respect to Count III of its answer and counter-claim. In essence, that counter-claim alleges that this court is without jurisdiction to consider plaintiff's claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* For the reasons set forth below, defendant's "Motion for Summary Judgment" will be granted and judgment shall be entered in favor of defendant Phelps Dodge.

### Factual Background and Procedural Posture

The record reveals the following to be the relevant facts.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on March 28, 1980. Plaintiff alleged that defendant Phelps Dodge Magnet Wire Company had discriminated against her, on the basis of her sex. Plaintiff had been placed on lay-off status after a "lock out" occurred when the company and the union were unable to reach an accord with respect to a collective bargaining agreement. After an agreement had been reached, plaintiff was not recalled to work and eventually she was terminated by Phelps Dodge. In response to those allegations, Phelps Dodge contended that worsening economic conditions led to plaintiff's termination and that her sex had nothing to do with the employment decision.

By letter dated April 4, 1980, the Equal Employment Opportunity Commission notified the plaintiff that her charge was being deferred to the Indiana Civil Rights Commission for initial action. The deferral to the Indiana Civil Rights Commission was made pursuant to 42 U.S.C. § 2000e–5(d) which provides for work sharing agreements between the EEOC and the appropriate state agency. In the April 4, 1980 letter, plaintiff was advised to fully cooperate with the Indiana Civil Rights Commission. In pertinent part the letter stated:

> You are encouraged to cooperate with the agency named above. The final findings and orders of the agency may be adopted by the Commission with no further action taken by the Commission. EEOC regulations require that you notify us of any change in address and keep us informed of any prolonged absence from your current address. Your cooperation in this matter is essential.

(Defendant's Brief in Support of Motion for Summary Judgment, Exhibit B, record at 22).

According to the Indiana Civil Rights Commission's findings, an attempt was made on July 11, 1980 to contact plaintiff at the telephone number set forth on her EEOC charge. A family member answered the call and was instructed to have plaintiff contact the Indiana Civil Rights Commission. On that same day, July 11, 1980, companion letters from the Indiana Civil Rights Commission and the Equal Employment Opportunity Commission were sent by certified mail to the plaintiff. The record reveals that plaintiff signed for those letters on July 15, 1980. (Defendant's Motion for Summary Judgment, Exhibit A, record at 22).

The correspondence sent by the Indiana Civil Rights Commission on July 11, 1980 requested that the plaintiff promptly provide that agency with information substantiating her allegations of discriminatory treatment, including the identities of possible witnesses and documentations of any damages suffered by the plaintiff which related to the alleged discrimination. Additionally, the letter stated:

> 3. Keep this office informed, in writing, of any change of your address and phone number. If you fail to do so and we are unable to contact you, your case may be closed permanently. . . .

> You must provide us with the above-requested information within 30 days, or your case will be closed. Enclosed is a copy of a letter from the E.E.O.C. indicating the same.

(*Id.*). The letter from the Equal Employment Opportunity Commission referred to in the Indiana Civil Rights Commission's correspondence to plaintiff, also indicated that plaintiff should fully cooperate with both Commissions:

> Your above referenced charge of employment discrimination has been filed with both the Indiana Civil Rights Commission (ICRC) and the Equal Employment Opportunity Commission (EEOC). The information requested from you in the enclosed letter from the ICRC is also required by the EEOC. It is therefore, necessary for you to cooperate as requested by by the ICRC. Please note that both EEOC and the ICRC will dismiss your charge if you do not respond to either the EEOC or the ICRC within thirty (30) days of your receipt of this letter.

(*Ibid.*).

Plaintiff wholly failed to respond in any manner to the request made by the Equal Employment Opportunity Commission and the Indiana Civil Rights Commission. Because of the lack of cooperation, and in accordance with the correspondence received by plaintiff, the Indiana Civil Rights Commission, on September 8, 1980, entered a finding that the plaintiff had failed to proceed on her complaint against Phelps Dodge Magnet Wire. By letter of September 12, 1980, plaintiff was informed of the Indiana Civil Rights Commission's determination. That letter stated:

> The Director of the Indiana Civil Rights Commission finds that the Complainant

did not proceed in this cause. A copy of the finding is enclosed herein.

This decision may be appealed within fifteen (15) days upon receipt of this letter. A timely appeal must be submitted in writing to the Commission office and objections must be stated as specifically as possible.

(Defendant's Motion for Summary Judgment, Exhibit A, record at 22). On December 3, 1980, the Equal Employment Opportunity Commission issued a "Notice of Right to Sue" to plaintiff which indicated that plaintiff's charge had been dismissed by the EEOC because:

He failed to provide requested necessary information, failed or refused to appear or be available for necessary interviews/conferences or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than thirty (30) days in which to respond to our final written request.

(*Id.*).

As evidenced by plaintiff's response to defendant's motion for summary judgment, she appears to have no quarrel with the above recitation of facts. Instead, plaintiff proffers three additional facts, which in her view, establish factual issues. First, plaintiff asserts that counsel for the plaintiff mailed a "notice of appearance" to the Indiana Civil Rights Commission on September 5, 1980; second, that plaintiff's counsel filed an appeal on October 3, 1980 regarding the dismissal of plaintiff's complaint; and third, that the Indiana Civil Rights Commission on November 24, 1980 upheld its original dismissal of plaintiff's complaint.

For purposes of the presently pending motion for summary judgment, defendant does not dispute the additional facts proffered by plaintiff. In fact, it is defendant's position that these additional facts are not material to the outcome of this litigation and that, therefore, there exists no genuine issue as to a material fact so as to preclude the entry of summary judgment in defendant's favor. As will be seen, this court agrees.

### Legal Discussion

In moving for summary judgment on Count III of its answer and counter-claim, defendant essentially argues that despite plaintiff's receipt of a "Notice of Right to Sue Letter", this court is without jurisdiction to consider plaintiff's claim under Title VII. Defendant argues that by ignoring the agencies' requests for necessary information, the plaintiff failed to cooperate in the investigation and potential conciliation of plaintiff's grievance with the defendant, and that such cooperation is a condition precedent to suit in this court. Plaintiff, on the other hand, contends that the only jurisdictional prerequisites for a Title VII action are the filing of a charge with the Equal Employment Opportunity Commission and the receipt of a "Notice of Right to Sue Letter", both of which have been satisfied in this case. Alternatively, plaintiff suggests that she did, in fact, cooperate with the administrative agencies and that an issue of material fact exists with respect to that cooperation.

█ While the statutory language of Title VII does not explicitly and clearly make exhaustion of administrative remedies a prerequisite to federal court jurisdiction, "[i]t is well settled that administrative remedies must be exhausted before jurisdiction vests in the federal courts." *Edwards v. Dept. of the Army*, 708 F.2d 1344, 1346 (8th Cir.1983); *Samson v. Civiletti*, 632 F.2d 860 (10th Cir.1980). The policies underlying the exhaustion requirement in Title VII cases are fully discussed in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). There the Supreme Court stated:

Congress enacted Title VII . . . to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex or national origin. . . . *Cooperation and voluntary compliance were selected as the preferred means for achieving this goal. To this end,*

*Congress created the Equal Employment Opportunity Commission and established a procedure whereby state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.*

*Alexander, supra* at 44, 94 S.Ct. at 1017. As the foregoing passage makes clear, the exhaustion prerequisite serves the important purpose of bringing the charged party before the Equal Employment Opportunity Commission as an aid in the effectuation of Title VII's primary goal—the securing of voluntary compliance with the law.

Most courts which have addressed the exhaustion issue have done so in the context where a plaintiff failed to file a charge with the Equal Employment Opportunity Commission and thereby completely avoided the administrative process. This case differs somewhat from that pattern in that plaintiff did indeed file a charge with the Equal Employment Opportunity Commission but later did not respond to that agency's or the state deferral agency's request for information needed to investigate plaintiff's charges and to attempt to conciliate her grievance. Nonetheless, those cases are enlightening insofar as they underscore the notion that the prime objective of Title VII is to accomplish compliance with the law through conciliation. *See Waters v. Wisconsin Steel Works,* 427 F.2d 476 (7th Cir.1970); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711 (7th Cir.1969). As stated by one court:

> An examination of the statutory scheme of Title VII makes it apparent that the purpose of filing a charge of discrimination with the EEOC is to trigger the investigatory and conciliatory procedures of that agency and not to function as a lawsuit itself.... It is only after investigation and failure in an attempt to obtain voluntary compliance with the law that the matter may become the subject of court action.... The federal courts cannot be used to bypass the EEOC machin-

ery. What happens at the EEOC level is of the utmost importance. Court action is limited to that range of issues that would have been the subject matter of the conciliation efforts between EEOC and the employer.

*Smith v. Joseph Horn Co., Inc.,* 438 F.Supp. 1207, 1211–12 (W.D.Pa.1977) (citations omitted). Thus, with conciliation as a primary objective behind the enactment of Title VII, failure to cooperate in an EEOC investigation, no less than failure to file with the administrative agency, serves to thwart the policy underling the enactment of Title VII.

While most cases relating to the exhaustion requirement have done so in the context where a Title VII complainant totally bypasses the administrative agencies, some courts have been faced with factual situations analogous to the case at bar and have uniformly held that failure to cooperate with the appropriate administrative agency during its investigative stage divests a federal court of subject matter jurisdiction because administrative remedies have not been exhausted. For example, in *Johnson v. Bergland,* 614 F.2d 415 (5th Cir.1980), a Title VII complainant resorted to the administrative process, but his administrative complaint was vacated because he failed to make his generalized discrimination charge more specific. In upholding the dismissal for failure to exhaust administrative remedies, the court stated:

> The administrative complaint procedures must be complied with. If they are, and an adverse decision is rendered on the merits of a complaint, then a complainant is entitled to a de novo hearing in federal court. However, if the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures the court should not reach the merits either. Otherwise the complainant might be dilatory at the administrative level knowing that he can get into federal court anyway. *See Ettinger v. Johnson,* 518 F.2d 648 (3d Cir.1975).

*Johnson, supra* at 417–18. A similar result was reached in *Edwards, supra* where the court held:

In the present case, the record clearly shows that Nagel, for whatever reason, failed to provide the EEO officer with the information she needed to take any meaningful action on his complaint. His general allegation of discrimination was therefore not within the purview of 29 C.F.R. § 1613.212. Exhaustion means just that. Nagel managed to travel the entire administrative route without ever making a concrete allegation. In light of this, the district court correctly entered summary judgment.

*Edwards, supra* at 1347 (footnote omitted).

█ As did the plaintiffs in *Johnson, supra,* and *Edwards, supra,* present plaintiff effectively avoided the administrative process and frustrated any administrative opportunity for investigation and informal grievance resolution. Though plaintiff did file a charge with the Equal Employment Opportunity Commission, her interaction with that agency and the state agency was otherwise nominal and without substance. By her own non-cooperation, plaintiff made it impossible for the administrative agency to attempt to resolve her case and in this respect did not adequately exhaust her administrative remedies so as to warrant the invocation of this court's jurisdiction. To hold otherwise would clearly frustrate the congressional intent and purpose behind the enactment of Title VII.

In reaching this conclusion, this court is not unmindful of plaintiff's arguments to the contrary and in particular those relating to her receipt of a Right to Sue Letter and her counsel's appearance before the Indiana Civil Rights Commission.

█ With respect to plaintiff's receipt of a "Notice of Right to Sue Letter", it should be noted that such a letter functions solely as formal notice that the Equal Employment Opportunity Commission has finished processing the claimant's case. It does not

in itself confer jurisdiction. Rather, 42 U.S.C. § 2000e, *et seq.,* confers jurisdiction over Title VII claims when the plaintiff has afforded an administrative agency the opportunity to informally conciliate the grievance. In this respect, the facts in this case should be distinguished from those in which the claimant did afford the EEOC an opportunity to conciliate the claim, but the EEOC, through some fault or finding of its own, was unable to resolve the grievance. In such cases, courts have held that receipt of a "Notice of Right to Sue Letter" is enough to invoke jurisdiction regardless of the reasons for issuance of the notice. *Cf. Beverly v. Loan Star Lead Construction Corp.,* 437 F.2d 1136 (5th Cir.1971); *Choate v. Caterpillar Tractor Co.,* 402 F.2d 357 (7th Cir.1968). Neither the Equal Employment Opportunity Commission's judgment on the merits of a claimant's case, nor its failure to investigate and conciliate that case should deprive a plaintiff of a federal court forum. Where, as here, however, the plaintiff herself is at fault for depriving the EEOC of its opportunity to investigate and conciliate her charge, the plaintiff cannot invoke the court's jurisdiction solely on the basis of the fact that she has received notice of her right to sue.

The fact that plaintiff's counsel mailed an appearance to the Indiana Civil Rights Commission on September 5, 1980 does not change this court's conclusion that plaintiff failed to cooperate with the Commission and in doing so failed to exhaust her administrative remedies. As it was before the Indiana Civil Rights Commission and the Equal Employment Opportunity Commission, the critical time frame for analysis is the thirty day period during which plaintiff was to respond with the information requested by the ICRC and the EEOC. That period expired on August 11, 1980. The pleadings, exhibits, and affidavits in the record show that beyond filing her charge, plaintiff rendered no cooperation to the agencies, requested or otherwise, in investigating and conciliating a grievance. Most notably, plaintiff received two letters

on July 15, 1980 which requested necessary information and notified her that her case would be dismissed if she failed to respond to the request within thirty days. Plaintiff neither responded to the request nor tendered an excuse for failing to do so nor did her attorney's belated correspondence provide that information. The mere filing of an appearance by counsel for plaintiff over three weeks later does not materially affect or excuse the lack of cooperation with agency procedures. In short, the conclusion is inescapable that the plaintiff withheld necessary cooperation from the administrative agencies.

Moreover, the question of whether the Indiana Civil Rights Commission received and considered the appearance of plaintiff's counsel before originally dismissing plaintiff's complaint is rendered moot by the fact that an appeal was subsequently filed on plaintiff's behalf which raised, among other issues, the precise question. The Indiana Civil Rights Commission reaffirmed its original order and dismissed the appeal on November 24, 1980. (See Response to Motion for Summary Judgment, Exhibit E, F). Clearly the Indiana Civil Rights Commission had before it counsel's appearance. The Commission, like this court, was of the view that an appearance on behalf of plaintiff in no way militated against a finding that plaintiff had wholly failed to cooperate and pursue her administrative remedies.

Taken in balance, this court finds that there exists no genuine issues as to any material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment with respect to its answer and counter-claim must be granted.

### Conclusion

The Motion for Summary Judgment on Count III of its Answer and Counter-Claim of defendant, Phelps Dodge Magnet Wire Company, is hereby GRANTED. Judgment is entered in favor of defendant Phelps Dodge Magnet Wire Company.