Kenneth Derell BURTON, Plaintiff,

v.

GREAT WESTERN STEEL
COMPANY, Defendant.

No. 90 C 7026.

United States District Court,
N.D. Illinois, E.D.

Aug. 24, 1993.

John Todd Faulkner, Robert W. Trevarthen, Savitri Padmaviti Pai, Klein, Thorpe & Jenkins, Ltd., Chicago, IL, for plaintiff.

Richard M. Waris, Matthew James Egan, Steven M. Laduzinsky, Pretzel & Stouffer, Chtd., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are the motions of Great Western Steel Company ("Great Western") to dismiss for lack of subject matter jurisdiction, for summary judgment, and to strike certain paragraphs of the plaintiff's affidavit in support of his response brief.

## I. FACTS

Kenneth Burton, who is black, alleges that Great Western discriminated against him based on race by rehiring Scott Kocher and Dan McCarthy, two white men, instead of Burton in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Great Western hired Burton on July 16, 1987. Defendant's 12(m) Statement, at ¶ 1. Great Western originally hired Kocher on October 19, 1987 and McCarthy on October 8, 1987. *Id.* at ¶¶ 2–3. All three men worked at Great Western's facility at 2300 West 58th Street in Chicago, Illinois, albeit on various different shifts. Burton and Kocher continued to work at Great Western until the company laid off several employees on October 28, 1988 due to a decrease in the workload at the plant. *Id.* at ¶ 7. McCarthy had been on disability leave since September 16, 1988 when he injured his hand while working at Great Western. *Id.* at ¶ 4. It is not clear whether McCarthy was among the employees laid off on October 28, 1988. *Id.* at ¶¶ 27, 29; Plaintiff's 12(n) Statement, at ¶¶ 27, 29. Great Western determined which employees would be "laid-off" pursuant to and in accordance with the terms of the collective bargaining agreement in effect between Great Western and Local # 714 of the International Brotherhood of Teamsters ("CBA"), which required Great Western to lay off employees in the reverse order of their hire. *Id.* at ¶ 9. Great Western allowed the employees to utilize their remaining vacation time to delay the effective date of the layoff and thus both Burton's and Kocher's layoffs became effective on November 7, 1988. *Id.* at ¶ 8. The CBA also provided that in the event Great Western laid off employees, any employee who had worked for the company for one to five years would retain their seniority rights for six months. Defendant's 12(m) Statement, at ¶ 6. Burton, Kocher, and McCarthy had all worked for Great Western for one to five years. Since Burton and Kocher used their remaining vacation time to delay the effective date of their layoff until November 7, 1988, Burton and Kocher lost their seniority rights under the CBA six months after that date. *Id.* at ¶ 10. Thus, it is undisputed that Burton and Kocher no longer had seniority rights in September of 1989.

During the month of September 1989, Jim Mumford, the assistant superintendent of the plant, indicated to Tony Stimac, the plant superintendent, that he needed another employee on his shift. *Id.* at ¶ 12. Stimac offered Mumford the option of rehiring Kocher or Burton, both of whom had expressed interest in returning to Great West-

ern after their seniority recall rights expired. *Id.* at ¶ 13. Great Western rehired Kocher. *Id.* at ¶ 19. Thereafter, Great Western rehired McCarthy. *Id.* at ¶ 28. However, the facts regarding when McCarthy was laid off, if ever, and whether his seniority status had expired before he was rehired are in dispute.

## II. DISCUSSION

### A. *Motion to Strike Certain Paragraphs of Plaintiff's Affidavit*

As a threshold issue, the court will dispose of defendant's motion to strike because the disposition of this motion may affect the disposition of the remaining motions. Great Western moves to strike paragraphs 1, 2, 4, 9, 11 and 12 of Burton's Affidavit ("Affidavit"), Exhibit C to Plaintiff's Memorandum of Law and Response to Defendant's Motion for Summary Judgment ("Response Exhibit"). Defendant moves to strike paragraphs 1, 2 and 4 because they contradict plaintiff's deposition testimony and paragraphs 9, 11 and 12 because they are not based on the affiant's personal knowledge.

First, defendant argues that paragraphs 1, 2 and 4 of plaintiff's affidavit contradict plaintiff's sworn deposition testimony. At Burton's deposition, defendant asked plaintiff the following questions and received the following answers:

Q: Have you kept in touch with the Illinois Department of Human Rights, that they should prosecute and pursue this?

A: No, I haven't.

Q: You haven't. Have you followed up with them in any fashion after filing this charge?

A: Oh yes, we stayed in contact. One of the gentlemen called me. Well, actually he just called and left a message at a relative's house to where he had the number. But we hadn't spoken any more about it.

Q: He called, left a message, you didn't call him back?

A: No.

Burton Deposition, at 97–98. In paragraph 1 of his affidavit, plaintiff states that he fully cooperated with the Illinois Department of Human Rights ("IDHR"), from the time he filed his complaint on January 10, 1990, until he received his "Notice of Right to Sue" letter on September 26, 1990. In paragraph 2, plaintiff states that after his step-mother received a telephone call from the IDHR during the summer of 1991, he returned the telephone call and informed the IDHR he was proceeding with his lawsuit against the company. In paragraph 4, plaintiff states that as a result of his contact with the IDHR during the summer of 1991 he believed nothing further was required of him by the IDHR.

 The court denies defendant's motion to strike as to paragraph 1 and grants the motion as to paragraphs 2 and 4. The court agrees with the plaintiff that paragraph 1 of the affidavit and the deposition testimony are not inconsistent. Since the phone call or phone calls from the IDHR were placed on or after June 18, 1991, they can have no bearing on plaintiff's cooperation and assistance between the time he filed his complaint with the IDHR on January 10, 1990 and the date he received his "Notice of Right to Sue" letter on September 26, 1990. *See* Defendant's Rule 12(m) Statement, at ¶¶ 39–40. As to paragraphs 2 and 4, however, the court agrees with the defendant that the affidavit directly contradicts the affiant's sworn deposition testimony. Plaintiff argues that his deposition statements that "we stayed in contact" and that "we hadn't spoken any more about it" imply that the plaintiff did communicate with the IDHR but after informing the IDHR that he had a federal lawsuit pending he and the IDHR "hadn't spoken any more about it." Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Affidavit, at 3. Plaintiff's argument is belied by his very next statement in the deposition. Plaintiff was asked whether someone "called, left a message, you didn't call him back?" Burton Deposition, at 98. Plaintiff responded "No." *Id.* The Seventh Circuit "has consistently held that a genuine issue of material fact cannot be established by a party contradicting his own earlier statements unless there is a plausible explanation for the incongruity." *Bank Leumi Le–Israel B.M. v. Lee,* 928 F.2d 232, 237 (7th Cir.1991) (citations omitted). Since the court finds plaintiff's

explanation of the apparent contradiction implausible, the court strikes paragraphs 2 and 4 of Burton's affidavit.

Second, defendant argues that paragraphs 9, 11 and 12 of plaintiff's affidavit should be stricken because they are not based on personal knowledge. In paragraph 12, plaintiff asserts that to the best of his knowledge Kocher never performed the job of slitter helper at Great Western prior to the October 28, 1988 lay-off. In paragraph 9, plaintiff asserts that the slitting machine is not a complicated piece of machinery and does not require the operator or helper to possess great skill and ability. In paragraph 11, plaintiff asserts that he was qualified to be trained as a slitter helper and the training could be accomplished in one week.

Federal Rule of Civil Procedure 56(e) requires that "[s]upporting and opposing affidavits be made on personal knowledge, ... set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, an affidavit not based on personal knowledge cannot be considered by the court in ruling on a motion for summary judgment. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989). Furthermore, statements in affidavits made "upon information and belief" that the fact alleged is true do not satisfy the requirement of personal knowledge. *United States v. Crispen*, 622 F.Supp. 75 (N.D.Ill.1985). However, personal knowledge includes "inferences from sense data as well as the sense data themselves (all knowledge is inferential—including sense data)...." *Palucki*, 879 F.2d at 1572.

As to paragraph 12, defendant contends that assertions about Kocher's prior work history do not rise to the level of personal knowledge required by Rule 56(e) because Kocher and Burton never worked together and Burton was not a supervisor or foreman or in any other management position whereby he could have first hand knowledge of Kocher's entire work history. Plaintiff argues that he worked "side by side with Kocher" on the first and second shift and "therefore could have personal knowledge that Kocher never performed the job of slitter

helper at the company prior to the lay off...." Plaintiff's Response to Defendant's Motion to Strike, at 4–5. However, plaintiff does not argue that he worked near Kocher all of the time the two men worked at Great Western. In fact Kocher and Burton worked on different shifts during part of the relevant time period. Furthermore, it is not sufficient that plaintiff "could have personal knowledge" or that the statement is to the best of his knowledge. Therefore, the court agrees with Great Western that paragraph 12 should be stricken.

With respect to paragraphs 9 and 11 of plaintiff's affidavit, defendant argues that since plaintiff admitted in his deposition that he never worked as either a slitter operator or a slitter helper, he has no personal knowledge as to the skill and ability required or the time period necessary to train to work in that capacity. Defendants contend that paragraph 9 constitutes an opinion as to the level of skill required to work as a slitter helper or operator that should be reserved for expert witnesses and paragraph 11 is based upon speculation and conjecture. Plaintiff argues that his statements were based on his observations while working at Great Western and his experience with certain other machines at Great Western. Because plaintiff states that he observed the operation of the slitter machine and the statements in his affidavit might be admissible as opinion testimony by a lay witness pursuant to Federal Rule of Evidence 701, the court denies defendant's motion to strike as to paragraphs 9 and 11.

Accordingly, the court grants in part and denies in part defendant's motion to strike certain paragraphs of plaintiff's affidavit insofar as the motion is granted as to paragraphs 2, 4 and 12 and denied as to paragraphs 1, 9 and 11.

### B. *Motions to Dismiss and for Summary Judgment for Lack of Subject Matter Jurisdiction*

Defendant moves to dismiss plaintiff's complaint and for summary judgment pursuant to Federal Rule of Civil Procedure 12(b)(1) claiming that this court lacks subject

matter jurisdiction. Because the defendant incorporated its motion to dismiss in its motion for summary judgment, the court will consider them together.

 Defendant argues that plaintiff failed to exhaust his administrative remedies because he did not cooperate with the IDHR's investigation of his claim. Of course, exhaustion of administrative remedies is a prerequisite to federal court jurisdiction over claims under Title VII of the Civil Rights Act. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In this case, Burton filed a complaint with the IDHR, but defendant argues that Burton failed to follow up on his complaint and did not cooperate with the investigation of the case.

 Defendant argues that by failing to respond when the IDHR attempted to contact plaintiff by telephone and by mail, he failed to participate in the administrative process and therefore has not exhausted his administrative remedies. In *Johnson v. Bergland*, 614 F.2d 415 (5th Cir.1980), the Fifth Circuit Court of Appeals upheld the district court's granting of summary judgment for the defendant in a Title VII action for plaintiff's failure to exhaust administrative remedies when plaintiff did not comply with the agency's request to make his complaint more specific to facilitate the agency's investigation of his claims. *Id.* at 417–18. The *Johnson* court stated that "if the agency does not reach the merits of the complaint because the complainant fails to comply with the administrative procedures the Court should not reach the merits either. Otherwise, the complainant might be dilatory at the administrative level, knowing that he can get into federal court anyway." *Johnson*, 614 F.2d at 418 (citing *Ettinger v. Johnson*, 518 F.2d 648 (3d Cir.1975)). Defendant argues that the plaintiff's conduct in the case at bar is the type of conduct the Fifth Circuit intended to prohibit in *Johnson*.

Similarly, in *Dates v. Phelps Dodge Magnet Wire Co.*, 604 F.Supp. 22 (N.D.Ind.1984), the plaintiff filed a complaint with the EEOC in March of 1980. The EEOC notified plaintiff on April 4, 1980 that it deferred her complaint to the Indiana Civil Rights Commission ("ICRC") and that plaintiff should cooperate with the ICRC investigation. The ICRC attempted to contact the plaintiff in July of 1980 by calling her at the telephone number listed in her EEOC charge and by mailing letters to the plaintiff requesting her to provide information substantiating her claim within 30 days and stating that if the ICRC was unable to contact plaintiff, her case would be permanently closed. Based on plaintiff's failure to communicate with them, the ICRC closed her file and notified plaintiff in writing of the dismissal on September 8, 1980. The EEOC issued a "Notice of Right to Sue" letter in December of 1980 stating that the charge was dismissed for plaintiff's failure to respond to the ICRC's request for information.

The *Dates* court granted defendant's motion for summary judgment based upon plaintiff's failure to exhaust administrative remedies. The court found plaintiff's participation in the ICRC proceeding to be "minimal and without substance" and that "by her own cooperation plaintiff made it impossible for the administrative agency to attempt to resolve her case and in this respect did not adequately exhaust her remedies so as to warrant invocation of this court's jurisdiction." *Id.* at 27. Furthermore, the court reasoned that the "Notice of Right to Sue" letter functioned solely as a formal notice that the EEOC finished processing the claim and did not confer jurisdiction over Title VII claims to a federal court. *Id.* Rather, the court stated, "42 U.S.C. § 2000e, *et seq.*, confers jurisdiction over Title VII claims when plaintiff has afforded an administrative agency the opportunity to informally conciliate the grievance." *Id.*[1] Thus, the court

---

1. The court notes that in *Dates,* the court provided the following caveat with respect to the import of a "Notice of Right to Sue" letter:

 [T]he facts in this case should be distinguished from those in which the claimant did afford

the EEOC an opportunity to conciliate the claim, but the EEOC, through some fault or finding of its own, was unable to resolve the grievance. In such cases, courts have held that receipt of a "Notice of Right to Sue" letter is enough to invoke jurisdiction regardless of

held that plaintiff could not invoke the court's jurisdiction based upon the receipt of a "Notice of Right to Sue" letter because she deprived the EEOC and the ICRC of any opportunity to investigate the claim. *Id.*

Defendant argues that the facts here mirror those in *Dates*. According to defendant, plaintiff filed his complaint with the IDHR on January 10, 1991,[2] and the EEOC issued its "Notice of Right to Sue" letter based upon the expiration of the allotted time period without a resolution of the complaint. The IDHR attempted to telephone plaintiff on June 18, 1991, June 19, 1991 and July 1, 1991 without success. On June 19, 1991, the IDHR spoke with plaintiff's "contact person" and left a message for plaintiff. The IDHR also mailed a letter to plaintiff, dated July 8, 1991, which informed plaintiff that if he did not contact the IDHR on or before August 5, 1991, his charge would be dismissed. As of August 6, plaintiff had failed to contact the IDHR to cooperate in the investigation of his charge. In plaintiff's deposition, he admitted that he never discussed his complaint with anyone at the IDHR after he received the message to telephone the IDHR. Burton Deposition, at 98.[3] Therefore, the IDHR dismissed plaintiff's complaint on November 6, 1991.

Plaintiff argues that he has met the prerequisites for subject matter jurisdiction in federal court on his Title VII claim. The Supreme Court has held that the only jurisdictional prerequisites to a federal action under Title VII are (1) timely filing a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") and (2) receiving, and acting upon, the EEOC's statutory notice of the "Right to Sue". 42 U.S.C. § 2000e–5(a) and 2000e–5(f); *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Plaintiff argues that the basic jurisdictional tenets of *McDonnell Douglas* apply even if the investigation and conciliation process has not occurred at the state and federal administrative level as long

as plaintiff is not at fault before the issuance of the "Right to Sue" letter by the EEOC.

Plaintiff cites *Sedlacek v. Hach*, 752 F.2d 333 (8th Cir.1985) to support his argument. In *Sedlacek*, the Iowa Civil Rights Commission and the EEOC failed to investigate or attempt to conciliate plaintiff's Title VII sex discrimination charge because both agencies determined that the defendant did not have a sufficient number of employees to be subject to Title VII. Although the district court concluded that the defendant did have the requisite number of employees to fall within the scope of Title VII, it dismissed the lawsuit for lack of subject matter jurisdiction because the EEOC had not investigated or attempted to conciliate plaintiff's claims. The Eighth Circuit Court of Appeals reversed, holding that the district court had subject matter jurisdiction and reasoning that "[t]he action or inaction of the EEOC and its failure to attempt conciliation cannot affect a complainant's substantive rights under Title VII." *Id.*

*Sedlacek* is not a precise analogue to the instant case, however. In *Sedlacek*, after the district court dismissed plaintiff's case for lack of subject matter jurisdiction, she asked the EEOC to reopen the case but was informed that it could not do so because the records had been destroyed. *Id.* Furthermore, in *Sedlacek*, neither the EEOC nor any state agency attempted to contact plaintiff to request cooperation in investigating her claim. Rather, the EEOC dismissed the claim because it erroneously assumed the employer did not have enough employees to be covered by Title VII. In the instant case, on the other hand, the IDHR dismissed Burton's claim because he failed to respond to its requests for cooperation.

Plaintiff also cites *Choate v. Caterpillar Tractor Company*, 402 F.2d 357 (7th Cir. 1968), where the district court dismissed plaintiff's Title VII sex discrimination complaint for lack of subject matter jurisdiction due to the EEOC's failure to attempt concili-

---

the reasons for issuance of the notice. *Dates*, 604 F.Supp. at 27.

2. This date is incorrect. Burton filed his complaint with the IDHR on January 10, 1990.

3. Although Burton's affidavit states otherwise, the court has stricken that portion of Burton's affidavit that directly contradicts his deposition testimony on this issue. *See supra.*

ation before issuing the "Right to Sue" letter. The Seventh Circuit reversed, refusing to penalize the plaintiff for the EEOC's failure to conciliate before issuing its right to sue letter and reasoning:

> [e]ven if no efforts [at conciliation] were made at all, the complainant should not be made to be the innocent victim of a dereliction of statutory duty on the part of the commission.

*Id.* at 361. Thus, plaintiff argues that according to the Seventh Circuit, all that is necessary is that the Commission had the opportunity to investigate and conciliate, not that they actually did so or attempted to do so. However, *Choate* is also distinguishable because at no time did the plaintiff in *Choate* refuse to cooperate with the EEOC or a state agency upon request as Burton did in the instant case.

Nonetheless, the court agrees with the plaintiff that the timing of plaintiff's conduct is significant in this case. Burton filed his complaint with the IDHR on January 10, 1990 (not January 10, 1991, as stated in Defendant's 12(m) Statement) and cross-filed with the EEOC. Neither agency investigated the charge within the 60–day period allowed for the IDHR[4] or the 180 day period allowed for the EEOC.[5] On September 26, 1990, plaintiff obtained a "Right to Sue" letter from the EEOC and timely filed his complaint in the district court on December 4, 1990. The IDHR did not attempt to contact plaintiff to investigate his claim until June 18, 1991, almost 18 months after plaintiff filed his discrimination charge and more than 6 months after plaintiff filed his lawsuit.

Plaintiff argues that *Dates* and *Johnson,* the cases cited by defendant, are distinguishable from the instant case based on the timing of the plaintiffs' conduct in those cases. In *Johnson,* the plaintiff failed to make his complaint more specific as the EEOC had requested before he filed his Title VII lawsuit. In *Dates,* the plaintiff failed to respond to the investigatory efforts of the Indiana Civil Rights Commission before the EEOC dismissed the charge for lack of cooperation and issued its "Right to Sue" letter. Therefore, plaintiff argues that in *Dates* and *Johnson,* the complainants' actions before filing their Title VII lawsuits precluded the investigatory and conciliation process from proceeding at the administrative level whereas here the IDHR and the EEOC failed to even initiate any investigation before plaintiff became entitled to and obtained his "Right to Sue" letter from the EEOC.

Defendant argues that the timing of a plaintiff's "dilatory" conduct is irrelevant. Defendant rejects plaintiff's attempt to distinguish *Dates* and *Johnson* based on when the dilatory conduct occurred. Defendant correctly points out that nowhere in those cases is the timing of the filing of a complaint in federal court discussed as a factor in the courts' rulings. Moreover, defendant argues that the plaintiff in the instant case acted "dilatorily" before and after the time he filed his complaint because he failed to contact the IDHR to help investigate the complaint, return phone calls when messages were left by the IDHR and appeal the IDHR dismissal order. Finally, defendant argues that the policy underlying the exhaustion of remedies requirement, the voluntary settlement of disputes through conference, conciliation and persuasion, are as important after a complaint has been filed as before a complaint has been filed and therefore should not influence this court's decision.

Nonetheless, the timing of plaintiff's conduct does influence this court's decision. Defendant cites *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974), for the proposition that the Supreme Court recognized that Congress intended administrative agencies to play a significant role in the fight against racially discriminatory practices. In *Alexander,* the Court stated:

> Cooperation and voluntary compliance were selected as the preferred means for achieving [the goals of Title VII]. To this

---

4. Title VII provides that state agencies have exclusive jurisdiction over alleged unlawful employment practice charges for at least sixty (60) days after the proceedings have been initiated. 42 U.S.C. § 2000e–5(c) and (d).

5. 42 U.S.C. § 2000e–5(f)(1).

end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.

*Id.* This court agrees that the exhaustion of administrative remedies requirement is firmly embedded in Title VII. However, as the Court stated in Alexander, the EEOC and state agencies must have an opportunity to settle disputes "before the aggrieved party was permitted to file a lawsuit." *Id.* Any other view would create the anomaly that defendants suggest here—that the court had subject matter jurisdiction when the plaintiff filed his Title VII action on December 4, 1990 but then lost subject matter jurisdiction beginning November 6, 1991 when Burton received notice that the IDHR dismissed his charge because he failed to cooperate in its investigation.

The court agrees that the outcome would be different if plaintiff refused to cooperate with the IDHR in investigating his charge before plaintiff received his "Notice of Right to Sue" letter and filed suit. Otherwise, the exhaustion of administrative remedies requirement would be a hollow one. Defendant argues that plaintiff acted "dilatorily" before filing his complaint. Defendant seems to suggest that plaintiff should have followed up after filing his charge with the IDHR by contacting the IDHR and offering assistance in the investigation. We think that is asking too much. Clearly it is the responsibility of the IDHR to investigate the charges and contact complainants when necessary. If the IDHR had contacted plaintiff before he received his "Right to Sue" letter and plaintiff failed to respond, the court would agree with the defendant that the plaintiff would not have exhausted his administrative remedies. However, plaintiffs should not be made to wait indefinitely for state agencies or the

EEOC to investigate their claims before they can proceed in federal court. Title VII, which sets forth a strict schedule for the procedures complainants must follow before they may bring a Title VII action in federal court, allows plaintiffs only 90 days after they receive their "Notice of Right to Sue" letter to file suit. 42 U.S.C. § 2000e–5(f)(1). Therefore, plaintiff had to file suit within the prescribed deadline. The plaintiff had exhausted his administrative remedies and this court had subject matter jurisdiction at the time plaintiff filed suit. Such jurisdiction, well-founded at the inception of the case, cannot be taken away at the whim of a state agency which suddenly decides to investigate an 18 month old charge.

Thus, the court finds that it has subject matter jurisdiction over this lawsuit. Accordingly, the court denies defendant's motion to dismiss and motion for summary judgment on the grounds of lack of subject matter jurisdiction.

### C. *Motion for Summary Judgment for Failure to Establish a Prima Facie Case under Title VII*

Having concluded that the court has subject matter jurisdiction over plaintiff's claim, we now turn to defendant's second ground for its motion for summary judgment. Defendant argues that the plaintiff has failed to establish a *prima facie* case under Title VII for racial discrimination. The Supreme Court set forth the elements of a *prima facie* case necessary to create an inference of discrimination in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must establish "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802, 93 S.Ct. at 1824.[6] *See also St. Mary's*

---

**6.** Satisfaction of these elements creates a rebuttable presumption of discrimination. The burden of production then shifts to the defendant to refute the presumption of discrimination by "ar-

ticulat[ing] some legitimate, nondiscriminatory reason for the plaintiff's rejection." *Id.* If the employer can articulate a legitimate nondiscriminatory basis for the action, the plaintiff then has

*Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

Defendant argues that the plaintiff has not established a *prima facie* case for race discrimination under Title VII. The defendant does not contest that Burton is a member of a racial minority. While Great Western does contest that plaintiff formally re-applied for a job with Great Western, it is aware that plaintiff called Great Western and advised he was available to work. Furthermore, the defendant admits that when a position opened, plaintiff was considered and rejected for the position. Great Western argues, however, that plaintiff was not qualified for the position, which required the candidate to work on the slitting machine. Plaintiff admitted during his deposition that he "never worked on the slitting machine at the time of his re-application." Burton Deposition, at 111. Defendant hired Kocher, who had worked as a slitter helper before he was laid off on October 28, 1988. The plaintiff disputes that Kocher ever worked as a slitter helper before the lay off. Plaintiff's 12(n) Statement, at ¶ 21; Burton Affidavit, at ¶ 12. However, the court has stricken paragraph 12 of plaintiff's affidavit because it is not based on personal knowledge. Great Western argues that it acted within its rights by re-hiring Kocher, who was qualified to work on the slitting machine, and not hiring plaintiff, who had never worked on the slitting machine. Accordingly, Great Western argues that it is entitled to summary judgment because Burton has not established a *prima facie* case.

■ In ruling on a motion for summary judgment this court must view the record and draw inferences from it in a light most favorable to the party opposing the motion. *Beard v. Whitley,* 840 F.2d 405, 409–10 (7th Cir.1988) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). However, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

Plaintiff argues that genuine issues of material fact exist over what qualifications, if any, were required for the position for which Kocher was rehired instead of plaintiff. *See* Defendant's 12(m) Statement, at ¶ 12; Plaintiff's 12(n) Statement, at ¶ 12. Furthermore, plaintiff argues that defendant's motion for summary judgment ignores the issue of Great Western's rehiring McCarthy and should be denied on that basis alone. Of course, the court may grant summary judgment as to all or any part of plaintiff's case, if appropriate. FED.R.CIV.P. 56.

With respect to what qualifications were required for the open position, plaintiff points out that James Mumford, Assistant Plant Superintendent, states in his affidavit that he advised the plant superintendent Anthony Stimac that Great Western needed an employee "who was capable of handling a wide range of tasks including helper on the slitter machine." Mumford Affidavit, at ¶ 1(b). Plaintiff argues that "[l]ess artfully, although perhaps more accurately, Mumford stated in his deposition that he informed Stimac only that Mumford needed 'another body' who had broad experience of what needed to be done on the night shift" and that he did not mention a slitter helper. Plaintiff's Response, at 10. Plaintiff further argues that "[u]nless Defendant is willing to concede that the initial 'another body' statement of Mumford established the qualifications necessary for the opening, there is a basic issue of material fact over what the qualifications of the job were. If Defendant required only 'another body', plaintiff obviously met defendant's qualifications. In any event, however, Mumford's statement in his deposition when contrasted with his affidavit, illustrates the conflict over what qualifications were required." *Id.*

the opportunity to allege that the reason proffered is a pretext for discrimination. The burden of persuasion never shifts away from the plaintiff, however. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks,* — U.S. at —, 113 S.Ct. at 2747.

Defendant argues that plaintiff mischaracterizes Mumford's deposition testimony. The statement to which plaintiff refers took place in the context of asking Mumford how he was involved in the decision to hire Kocher:

Q. You were asked for a recommendation, or how were you involved in it?

A. I was involved to the capacity of needing a body. There was two to choose from, Scott Kocher, Ken Burton. It was strictly based on ability of a broad experience of what need [sic] to be done on the night shift and that alone. Scott Kocher had the ability. It was a judgment call from my evaluation of the two. Scott Kocher fit exactly what need [sic] to be done at that particular time.

Mumford Deposition, at 35. Thus, defendant contends that when placed in the proper context, it is clear that Mumford's statement about "needing a body" does not refer to the qualifications necessary to fill the open position, but to the existence of an open position on his shift. Therefore, defendant notes that when placed in proper context, Mumford's deposition testimony does not contradict his affidavit as plaintiff suggests. Rather, Mumford's affidavit sets forth in greater detail the basis for his decision that Kocher had the ability to work in the open position on the second shift and Burton did not. Mumford Deposition, at 35, 48, 58–59.

The court agrees that Mumford's deposition testimony does not contradict his affidavit. Therefore, the issue whether Great Western needed to hire someone who was qualified to work on the slitter machine is not seriously in dispute. Furthermore, the court notes that no one disputes that the position to which Kocher returned on September 19, 1989 was slitter helper. 12(m) Statement, at ¶ 21; 12(n) Statement, at ¶ 21 (plaintiff only disputes Great Western's statement that Kocher held the position of slitter helper prior to his lay-off, a dispute precluded by the court's ruling on defendant's motion to strike).

In the alternative, plaintiff argues that if the relevant qualification was an employee capable of handling a wide range of tasks, including helper on the slitter machine, a genuine issue of material fact exists because plaintiff claims he was qualified for the position even though he had never worked on the slitter machine. Plaintiff contends that a dispute is created by the fact that when McCarthy was rehired shortly after Kocher, McCarthy worked on the slitter machine despite never having worked on the machine and having been off work approximately one year. Burton Deposition, at 163. It follows, plaintiff argues, that little or no experience or qualifications are necessary to work on the slitter machine. Furthermore, although plaintiff admits he never worked on the slitter machine, he states that the slitter machine is not a complicated piece of machinery and that he had general knowledge of its operation from his personal observations as well as his experience as a helper and operator on the shearing machine. Plaintiff's 12(n) Statement, at ¶¶ 15–17. Plaintiff further claims that he was qualified to be trained as a slitter helper and the training could be accomplished in one week. Plaintiff also claims that Stimac agreed he was qualified for the position of slitter helper because Stimac told Mumford to recommend either Burton or Kocher for the available position. Plaintiff's Statement of Additional Facts Under Rule 12(n), at ¶ 3. Finally, plaintiff claims that because his classification and pay level were higher than Kocher's at the time of the lay off, plaintiff must have "greater qualifications."

█ Plaintiff does not establish a *prima facie* case by stating that he could be trained to work on the slitting machine. If he could, the qualification element would be a shallow one. To state a *prima facie* case and survive a motion for summary judgment, plaintiff must establish that he is qualified for the open position. He has not done so. The court has found that the requisite qualifications for the open position for which Great Western hired Kocher are not seriously in dispute. Great Western needed an employee "who was capable of handling a wide range of tasks including helper on the slitter machine." Mumford Affidavit, at ¶ 1(b). It is undisputed that Burton was not qualified for the position of slitter helper.

Furthermore, plaintiff's remaining arguments are misplaced. First, the fact that Stimac told Mumford to choose between Burton and Kocher for the open position does not mean Stimac agreed Burton was qualified. Rather, it shows loyalty towards two former employees who indicated they were available to return to work. Second, plaintiff's level of classification and rate of pay relative to Kocher's provides no index as to whether plaintiff was qualified for a position which included work as helper on the slitter machine. Plaintiff must show that he was qualified for the particular position available, not that he was generally more qualified than the individual hired. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Also, the classification is not a good indicator of overall skill and ability because it is based on length of service, not overall level of skill. Great Western allows an employee with a higher seniority rating to "bump" employees with lower ratings to a position with a lower classification and rate of pay. In fact, as defendant points out, the CBA recognizes that the employee's rate of pay would be governed by the employee's classification and the work performed "irrespective of the employee's ability to perform a higher skilled function." CBA, Article VIII(f), at 10. Plaintiff had a higher classification than Kocher because plaintiff used his seniority to "bump" Kocher after plaintiff had been "bumped" by another employee with a higher seniority rating.

Thus, the court finds that no genuine issue of material fact exists about the qualifications for the open position and whether Burton met those qualifications. The job required a candidate who could work on the slitter machine. Burton had never worked on that machine. Therefore, Burton was not qualified for the position. Accordingly, the court grants summary judgment in favor of the defendant on the issue of whether the hiring of Kocher instead of plaintiff constituted race

discrimination under Title VII because plaintiff has not made out a *prima facie* case.

The court must determine, however, whether any genuine issue of material fact exists with respect to the plaintiff's allegation that Great Western discriminated against him based on race in re-hiring McCarthy. Defendant maintains that Great Western had to allow McCarthy to return to work on October 5, 1989 because his seniority was protected by the CBA. Plaintiff asserts that McCarthy's seniority rights had expired before Great Western rehired him.

Contradictory evidence exists on this issue. First, a letter dated October 31, 1988 from John W. Malec, President of Great Western, includes McCarthy's name on the list of employees "on immediate lay off." Response Ex. N. Second, a "Record of Employee Change" dated April 5, 1989 states that McCarthy called in on that date saying he could return to work and was informed that due to lack of work he was laid off. Response Ex. P.[7] Third, a "Record of Employee Change" dated October 5, 1989 states that McCarthy was "re-instated." Response Ex. J.[8] Fourth, McCarthy remained on disability status and continued to receive disability benefits until September, 1989. *See* Affidavit of Irv Schmidt, Assistant Comptroller of Great Western Steel, Defendant's Ex. 14. Relying on these contradictory documents, the parties dispute whether McCarthy's seniority rights under the CBA had expired when Great Western re-hired him on October 5, 1989.

Plaintiff asserts that McCarthy's seniority rights had expired on October 4, 1989, the day before Great Western rehired him because plaintiff was laid off on April 5, 1989, the date McCarthy called Great Western to say he could return to work. *See* Plaintiff's 12(n) Statement, at ¶ 29. Defendant asserts that on April 5, 1989, McCarthy's doctor had only cleared his return to light work duty.

---

7. The explanation section reads in its entirety: Off of work since 9/16/88 on workman's comp. Called in today saying he could return to work. Was informed that due to lack of work he is laid off. Had he been working on 10/28/88, he would have been included in the layoff of 10 workers at that time due to lack of work.

8. The explanation section reads in its entirety:

Employee reinstated. Off on workman's comp. due to injury on 9/16/88. Fractured right wrist and lacerated right hand. Doctor gave O.K. for complete return to duty on 9/21/89—See attached.

Because Great Western did not have a light duty status, defendant argues, McCarthy remained on disabled status and continued to receive disability benefits until his doctor cleared his return to full work duty in September of 1989. Defendant contends that assuming arguendo McCarthy was laid off on April 5, 1989, his seniority would have been protected for six months, or until October 5, 1989, the date McCarthy was re-hired. Thus, there is a dispute about what is meant by "six months" in the seniority provision in the CBA.

The CBA provides that "an employee's seniority rating shall terminate in the event he ... in the case of an employee with one (1) to five (5) years of continuous service, has been laid off for a continuous period of six (6) months...." Response Ex. I, CBA, Article VII, ¶ (a)(4), at 7. Nowhere in the CBA is the calculation of time explained or defined. Defendant argues that everyday common usage indicates that six months from January 1, 1989 would be June 1, 1989, not May 31, 1989. Because this clause is susceptible to more than one interpretation, however, the court cannot grant summary judgment on this issue.

The court does not find that McCarthy was laid off on April 5, 1989; rather, since some of Great Western's documentation supports that conclusion, the court had to consider whether that possibility could create a genuine issue of material fact. It does. There remains a dispute over whether McCarthy was laid off on April 5 because it is plausible that when he called on April 5 to say he could return to work, McCarthy had not yet indicated that his doctor only approved him for light duty. This raises the possibility that the "Record of Employee Change" dated April 5, 1989 is in error and would explain why McCarthy received disability benefits until September, 1989 or before that date. On the other hand, there is no form correcting any such error and no statement indicating that his receipt of disability benefits until September of 1989 is inconsistent with the allegation that he was laid off in April of 1989. The court does not decide this issue. Accordingly, the court cannot grant summary judgment as to plaintiff's claim alleging

Great Western discriminated against him by rehiring McCarthy instead of Burton.

### III. CONCLUSION

For the reasons stated above, the court grants in part and denies in part defendant's motion to strike certain paragraphs of plaintiff's affidavit, denies defendant's motion to dismiss, and grants in part and denies in part defendant's motion for summary judgment. With respect to the motion to strike, the motion is granted as to paragraphs 2, 4 and 12 and denied as to paragraphs 1, 9 and 11. With respect to the motion to dismiss, the motion is denied in its entirety. With respect to the motion for summary judgment, the motion is denied on the issues of subject matter jurisdiction and plaintiff's allegations regarding Great Western's decision to re-hire McCarthy and granted as to plaintiff's claims regarding Great Western's decision to re-hire Kocher.