**HONEYWELL, INC., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 91–3455.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1992.

Decided Aug. 21, 1992.

---

James F. Carroll, Minneapolis, Minn., argued (James F. Carroll and Myron L. Frans, on the brief), for appellant.

Bridget M. Rowan, Washington, D.C., argued (James A. Bruton, Gary R. Allen, Ann B. Durney and Bridget M. Rowan, on the brief), for appellee.

Before WOLLMAN and HANSEN, Circuit Judges, and ROY,* Senior District Judge.

ROY, Senior District Judge.

The plaintiff/appellant in this action, Honeywell, Inc. ("Honeywell"), sought to amend its 1979 income tax return in March of 1987 by claiming additional tax credits under the Work Incentive Training ("WIN") program. The Internal Revenue Service denied the claim, resulting in Honeywell bringing suit in the District Court for the District of Minnesota. Following the submission of cross-motions for summary judgment, the district court[1] entered summary for the United States. For the reasons set out below, the order and judgment of the district court will be affirmed.

* The HONORABLE ELSIJANE TRIMBLE ROY, United States Senior District Judge for the Eastern District of Arkansas, sitting by designation.

I.

The WIN program was established by Congress in 1968 for the purpose of reducing the number of people on the welfare rolls by utilizing work training. The program was modified in 1971 by adding a tax credit for private sector employers as an incentive to induce them to hire WIN program participants. The amount of the tax credit was determined, in part, by how many welfare recipients an employer hired.

In 1979, the tax year for which Honeywell filed its amended return, 26 U.S.C. § 50A(a)(1) allowed 50% of an "eligible employee's" first-year salary and 25% of his second-year salary as WIN tax credits to the employer. In Section 50B, an "eligible employee" was defined as a person:

(h)(1)(A) who has been certified by the Secretary of Labor or by the appropriate agency of State or local government as—

(i) being eligible for financial assistance under part A of title IV of the Social Security Act and as having continually received such financial assistance during the 90–day period which immediately precedes the date on which such individual is hired by the employer, or

(ii) having been placed in employment under a work incentive program established under section 432(b)(1) of the Social Security Act,

(B) who has been employed by the taxpayer for a period in excess of 30 consecutive days on a substantially full-time basis (except as provided in subsection (i)),

(C) who has not displaced any other individual from employment by the taxpayer, and

(D) who is not a migrant worker.

26 U.S.C. § 50B(h)(1) (1979 ed.) (repealed by Act July 18, 1984).

In 1978 and 1979 Honeywell hired and obtained certification for several people under the WIN program. The following year, Honeywell filed its 1979 income tax return,

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

claiming tax credits relating to those people. No one has questioned the appropriateness of those credits.

In 1981, Congress passed the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 172 ("ERTA"). Among other things, ERTA merged the WIN tax credit program into the "targeted jobs" credit as set forth in 26 U.S.C. §§ 44B and 51 (1982 ed.). For tax years after December 31, 1981, tax credits for hiring members of certain "targeted" groups of economically disadvantaged people, including those in the WIN program, were available under sections 44B and 51 of the Code, 26 U.S.C. §§ 51(d)(1)(H), 51(d)(9). The separate WIN credit for subsequent tax years was repealed.

ERTA specifically required that an employer would not be eligible to claim a credit for hiring someone within a "targeted group" unless that person had already been certified by the proper agency as being from that target group or unless the employer had already requested in writing said certification. This must have been done *"on or before* the day [the] individual begins work ..." [2] (emphasis added).

At the time ERTA was passed, Congress noted that in many cases employees were *being* hired before the employer even knew such individuals were members of a targeted group. In such cases, the credit clearly was not serving its purpose of acting as an incentive for hiring these people in the first place. *See Lucky Stores v. Commissioner,* 92 T.C. 1151, 1164 (1989).

In 1984 Congress passed the Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 474(m), 98 Stat. 494, 833 (1984), which among other things, prospectively did away with WIN credit claims entirely.[3] Thereafter, the IRS addressed the issue of whether post-hiring certifications, *i.e.* "ret-

roactive certifications," disqualified an employer from claiming a WIN credit for hiring such an employee. Noting the plain language of the statute and its legislative history, the IRS took the position that WIN credit claims could not be based on retroactive certifications. It notified taxpayers by issuing on March 12, 1987, its General Counsel Memorandum No. 39,604. *See* 1987 General Counsel's Memorandum No. 39,604, *IRS Positions 1986–1990* (CCH), ¶ 1910, p. 6518. The memorandum stated that, in order to qualify for the WIN tax credit, both the determination that the employee is an eligible employee and the certification must be part of the decision to hire the individual. The IRS stated:

> We believe that unless an employee was certified by the appropriate agency before he was hired, he was not an eligible individual within the meaning of section 50B. Thus any attempt to certify such individuals four to six years after they were hired does not satisfy the certification requirements of the statute.

*Id.* at 6522.

On March 30, 1987, just 18 days after the IRS memorandum was issued, Honeywell filed an amended 1979 tax return in which it claimed additional WIN credits for that year relating to 622 retroactively certified employees. The employees had been "discovered" several years after the fact by a consulting firm retained by Honeywell for the express purpose of determining if any of its former or current employees had been eligible for public assistance in 1979. The firm compared computer lists of welfare recipients with the names of employees with the company in that year and developed a list of people who had never been certified. The firm then contacted the appropriate state agencies and obtained certification for those 622 individuals, all of

---

**2.** 26 U.S.C. § 51(d)(16)(A) reads in pertinent part:

(A) In general. An individual shall not be treated as a member of a targeted group unless, on or before the day on which such individual begins work for the employer, the employer—
(i) has received a certification from a designated local agency that such individual is a member of a targeted group, or

(ii) has requested in writing such certification from the designated agency.

**3.** Section 474(m) of the 1984 Act entirely repealed Code sections 44, 50A, and 50B for tax years beginning after December 31, 1983 and also carrybacks from such years.

whom who had worked for Honeywell in 1979, but for whom WIN credits had never been claimed. The total amount of credit claimed was $906,670; the resulting claim for refund was in the amount of $489,602. On August 22, 1988, the IRS notified Honeywell that the claim had been denied.

At about the same time, the issue of retroactive certification was being litigated by another firm in *Lucky Stores v. Commissioner*, 92 T.C. 1151 (1989). That taxpayer had also employed a consultant to generate a list of employees for whom retroactive certification was sought. The Tax Court held that the taxpayer/employer's after-the-fact certifications met the WIN certification requirements for claims relating to tax periods before July 23, 1981 (the effective date of the ERTA amendments). The Court opined that Congress had not specified, prior to the passing of ERTA, whether the certifications had to be obtained prior to actually hiring the employees.

At least partially in response to the decision in *Lucky Stores*, Congress addressed the issue of retroactive certification in the Omnibus Budget Reconciliation Act of 1989 ("the 1989 Act")[4]. Section 7644(b) of the Act amended Section 50B(h)(1)(A) of the Code to more clearly prohibit retroactive certifications. The amendment was made retroactive to March 12, 1987, the date the IRS had published its 1987 General Counsel Memorandum No. 39,604.[5]

Honeywell brought suit in district court contesting the denial of its claim, and both parties moved for summary judgment. The District Court held that claims for tax credits relating to retroactively certified employees were barred if filed after March 11, 1987. It also held that Congress' amendment of the WIN credit provision was not a change in a statute of limita-

tions, as claimed by Honeywell, nor was it otherwise unconstitutional. The Court accordingly entered summary judgment on behalf of the United States. This appeal followed.

## II.

Summary judgment is appropriate only when the district court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Furthermore, "a motion for summary judgment must be viewed in a light most favorable to the non-moving party, and that party must receive the benefit of all reasonable inferences to be drawn from the underlying facts." *Ivan Spencer v. Kroger Company*, 941 F.2d 699 (8th Cir.1991), *citing Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987).

The three issues Honeywell has presented on appeal may be summarized as follows:

A) Whether in fact the 1989 Act passed by Congress was essentially a statute of limitations that unfairly retroactively cut off Honeywell's claim, thereby making it unconstitutional as applied.

B) Whether, even if the 1989 Act were constitutional, Honeywell's 1987 claim should be allowed because it merely seeks additional refund amounts based on the same grounds set out in its original 1979 return.

C) Whether the United States is bound by its agreement with Honeywell to extend until June 30, 1989 the deadline within

---

**4.** Pub.L. No. 101–239, 103 Stat. 2106. It was enacted on December 19, 1989.

**5.** Subsection (a) reads, in pertinent part, as follows:

(a) IN GENERAL.— ... subparagraph (A) of section 50B(h)(1) of the Internal Revenue Code of 1954 (as in effect for taxable years beginning before January 1, 1982) ... is amended to read as follows:

"(A) who has been certified (or for whom a written request for certification has been made) on or before the day the individual began work for the taxpayer by the Secretary of Labor or by the appropriate agency of State or local government as—"

(b) EFFECTIVE DATE.—The Amendment made by subsection (a) shall apply for purposes of credits first claimed after March 11, 1987.

which Honeywell could file its refund claim.

\*     \*     \*

*A. The 1989 Act was an unconstitutionally applied statute of limitations*

■ Honeywell argues that the 1989 Act was an unconstitutionally applied statute of limitations. In other words, Honeywell contends that based on the decision in *Lucky Stores*, its filing was well ahead of the deadline for filing claims for tax credits based on retroactively certified employees. When Congress passed a new deadline which related back more than thirty months to a point in time just eighteen days *before* Honeywell had filed its amended return, its action was so harsh as to constitute a deprivation of property without due process of law.

Honeywell's argument on this point presupposes that the enactment of the 1989 amendments (Section 7644) should be characterized as simply a change of the applicable statute of limitations. As did the district court, we hold that what has occurred in this instance is not a modification of the applicable statute of limitations, but rather a law passed to eliminate a particular type of refund or credit altogether. Though appellants would argue that that is a distinction without any meaning, we disagree, especially considering that tax code changes are routinely made retroactive.

As we noted in *Fein v. United States*, 730 F.2d 1211 (8th Cir.1984):

> There is nothing unusual about retroactive tax laws. "Congress almost without exception has given each such statute an effective date prior to the date of actual enactment...." *United States v. Darusmont*, 449 U.S. 292, 296, 101 S.Ct. 549, 551, 66 L.Ed.2d 513 (1981) (per curiam). Most such retroactive enactments have been upheld as against due-process challenges, on the theory that some limited retroactivity is necessary as a practical matter to prevent the revenue loss that would result if taxpayers, aware of a likely impending change in the law, were permitted to order their

affairs freely to avoid the effect of the change.

> The retroactive application of a tax statute may still, in a given case, be so unreasonable as to amount to a deprivation of property without due process of law. In determining whether a tax meets this threshold, the Supreme Court has looked to two main considerations: whether the change in the tax law was reasonably foreseeable ... and whether the change was only a change in tax rate or the imposition of a new tax ... (citations omitted).

*Id.* at 1212–13. After applying those two considerations to the instant case, this Court concludes that "there is nothing about this case so grossly unfair as to violate the Constitution...." *Id.* at 1213.

In *Fein*, the tax law retroactively changed had to due with the tax treatment of a decedent taxpayer's transfer to his wife of an insurance policy the decedent had taken out on his life. In that case we found that no constitutional violation had resulted from the retroactive change because the decedent had "not been shown to have had any relevant expectations about the estate-tax laws when he bought and later gave away the policy." *Id.*

Similarly, today we note that when Honeywell hired the 622 employees in question, it had no reasonable expectation that the hirings would result in favorable tax benefits inuring to it. Indeed, the hiring decisions relating to those individuals were made without the company being aware that those people even qualified for the WIN program. After being made aware later that those hirings might entitle the company to certain tax credits, Honeywell assumed the risk of those benefits being lost by waiting so long to claim those benefits.

Furthermore, just as *Fein* involved the elimination of an exemption, rather the imposition of a new tax, in the instant case we are dealing with the elimination of a tax credit rather than a new tax. "This kind of tinkering, though certainly annoying to taxpayers and their advisers, is a regular feature of the tax-law landscape.... The change of which plaintiff complains here is, we think, closer in kind and in effect to a

mere increase in the tax rate than to the enactment of a wholly new tax." *Id.* It does not constitute a violation of due process.

*B. The 1987 claim based on same grounds as in 1979*

██ Honeywell also argues that even if the 1989 amendment is considered constitutional, its 1987 refund claim should still be allowed because its 1987 refund claim is merely a supplement of an earlier claim made in its original 1979 return. It argues that an amended claim would be allowable as long as the grounds for the refund are the same as before. It further states that:

> The additional employees claimed in 1987 do not represent new and separate theories of recovery or separate grounds for recovery. The employees Honeywell claimed [on both tax refund claims (1979 and 1987)] were all claimed under the same WIN Credit theory, and virtually all were claimed based on post-hire-date WIN employee certifications.

Appellant's brief at 24.

The Treasury Regulation specifying the form and contents of a refund claim is found in Treas.Reg. § 301.6402–2(b)(1), which provides:

> No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

Of course, this argument presupposes that we are dealing with a statute of limitations. As stated above, we have found that what is involved is not a statute of limitations, but rather a law eliminating a partic-

ular type of refund. As the district court pointed out:

> "If the Court were to accept Honeywell's argument, then any law changing the requirements for a refund, or for any cause of action, would become a de facto statute of limitation because it would place a permanent barrier on the time in which the action may be brought."

> \*    \*    \*    \*    \*    \*

> The Court is of the opinion that the Treasury Regulation ... does not apply.

Joint Appendix at 25.

Even assuming, *arguendo*, that the Regulation applied, Honeywell's claim would not meet its requirements. One of the cases offered by the appellant on this point, *First National Bank & Trust v. United States*, 329 F.Supp. 1147 (W.D.Okla.1971), sets out the general proposition that amendments offered for a previously filed return which suggest merely a new *value* for a claimed deduction (and by analogy, a tax credit) are favored over amendments which cite new or different *grounds* for the deduction (or credit).

Keeping in mind that that case is in no way binding on this Court, we note that the case is easily distinguishable from the matter currently before us. First of all, those facts involved a taxpayer seeking to file an amended return *within the applicable statute of limitations*, yet "after the same ha[d] been considered and rejected by the Internal Revenue Service." *Id.* at 1148. Second, that case concerned the value to be placed on the loss of a single building. That taxpayer was not attempting to amend the return to add several more buildings for which a loss could be claimed.

Another case cited by the appellant, *Anderson v. United States*, 468 F.Supp. 1085 (D.Minn.1979), did in fact involve an amended claim which came after the expiration of the statutory period of limitation. There the taxpayer belatedly decided that all of the sale proceeds of a business deal were entitled to capital gains treatment, instead of just some portion of them as he had originally reported. The court noted that only the amount offered as deserving of capital gains treatment had changed.

The grounds on which the claim was sought had not changed, nor had any of the other facts.

The case before the Court is significantly different because Honeywell's 1987 claim was based on 622 employees not related at all to the 1979 claim. This is not an example of a taxpayer "obtain[ing] new facts supporting amendment of [an] earlier refund amount." Appellant's brief at 23. Rather, it is a case of wanting new and additional credits based on new claims regarding employees for whom tax credits had never been sought.

*C. Agreement with the IRS to extend the deadline for filing claim*

■ Finally, Honeywell contends that the government is bound by its consent agreement with Honeywell to extend through and including June 30, 1989 the time for Honeywell to file refund claims for its 1979 tax year. However, simply because the time for filing such a claim was increased has nothing to with Honeywell receiving favorable treatment on the merits of its claim for tax credits. Once again, what is before us is a law eliminating a particular type of tax credit, not a change in a statute of limitations. Congress has decided that the particular tax credit in question is no longer available and has made its decision retroactive. Appellant's argument is without merit on this point.

### III.

The district court's entry of summary judgment for the United States is affirmed. Likewise, its denial of the Appellant's motion for summary judgment is affirmed.