**Bobbie ADAIR, Plaintiff,**

v.

**BROADLAWNS MEDICAL CENTER, Defendant.**

**Civil No. 4–96–CV–20739.**

United States District Court, S.D. Iowa, Central Division.

Sept. 22, 1999.

Robert A. Wright, Jr., Des Moines, IA, for Plaintiff.

James R. Swanger and David L. Brown, Des Moines, IA, for Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT, AND ORDER

BREMER, United States Magistrate Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment (Clerk's No. 35), filed July 21, 1999. Plaintiff filed a Resistance to the Motion (Clerk's No. 40) on August 11, 1999; and an Amended Resistance (Clerk's No. 50) and Memorandum in Support of Resistance (Clerk's No. 52)[1] on September 13, 1999. Defendant filed a Reply (Clerk's No. 55) on September 20, 1999. The parties consented to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c). The Motion is fully submitted.

Plaintiff filed her Petition in the Iowa District Court for Polk County on August 16, 1996, and Defendant filed a Notice of Removal to this Court under 28 U.S.C. § 1446(d) on October 7, 1996. Plaintiff asserts claims for racial discrimination through failure to promote and creation of a hostile work environment under the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e—2000e–17 (1994 &

---

1. Defendant contends the Memorandum in Support of Resistance was late and should be stricken. The Court, however, granted Plain-

tiff's oral request for extension of time from Friday, September 10, 1999, to Monday, September 13, 1999.

West Supp.1996), and the Iowa Civil Rights Act, Iowa Code chapter 216 (1996).

In the Motion for Summary Judgment, Defendant argues the following: The Court lacks subject matter jurisdiction because Plaintiff failed to exhaust her administrative remedies; Plaintiff can establish neither a prima facie case of discrimination, nor facts that would permit a jury to conclude that Defendant's proffered legitimate non-discriminatory reasons for its actions were a pretext for racial discrimination; Defendant responded appropriately to all Plaintiff's complaints; and the statute of limitations bars all or some of Plaintiff's claims.

## I. SUMMARY JUDGMENT STANDARD

After filing a motion for summary judgment, the moving party holds the initial burden of showing it is entitled to judgment as a matter of law when no genuine issues of material fact remain for trial. See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Estate of Gavin v. United States*, 113 F.3d 802, 805 (8th Cir.1997); *Honeywell, Inc. v. United States*, 973 F.2d 638, 641 (8th Cir.1992). On a motion for summary judgment, a court must consider the facts and inferences to be drawn in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Shempert v. Harwick Chemical Corp.*, 151 F.3d 793, 795 (8th Cir.1998) (citing *Crain v. Board of Police Comm'rs*, 920 F.2d 1402, 1405–06 (8th Cir.1990)), *cert. denied*, 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999).

## II. FACTS

For purposes of this Motion, the following facts are undisputed or are viewed in the light most favorable to the nonmoving party.

Plaintiff Bobbie Adair (Adair), an African–American female, has had several positions at Defendant Broadlawns Medical Center (Broadlawns), Des Moines, Iowa, since she began work there in 1979. Adair has worked in the collection department under Doug Clarke's supervision since the fall of 1995.

On March 21, 1996, Adair filed a complaint with the Iowa Civil Rights Commission (ICRC). In her complaint, Adair described why she felt she was discriminated against:

> I believe that I have been discriminated against by my employer who has failed to take appropriate action to relieve a racially hostile work environment that has been created by my supervisor, Doug Clark.

> In addition to that, I have made application for promotions and/or transfers in the collection area and have been passed over for less qualified white individuals.

> I was recently told that I would not be considered for a position as collector on the ground that I did not meet some of the minimal qualifications though I have been working in collections for 8 or 9 months.

> I believe that this is another act of discrimination on the basis of my race. Furthermore, my employer has not taken adequate action against my supervisor though I have complained in the past, I continue to be subjected to harassment, increased scrutiny, discipline, and different terms and conditions of employment than that enjoyed by white employees. All of this has subjected me to a hostile work environment.

Def.'s Ex. 14 at 4–5.

ICRC's procedure provides that after a complaint is filed, the agency may draft and mail written questionnaires to the parties. Iowa Admin. Code r. 161–3.12(1)(a) (1993). The parties must respond in writing to their respective questionnaires, or they may submit written position statements, which should cover the same gener-

al subjects covered by the questionnaire. Iowa Admin. Code r. 161–3.12(1)(b)(1).

The ICRC sent Adair a questionnaire seeking information regarding her claim, as provided under regulation 161–3.12(1)(a). Broadlawns asserts, and Adair does not dispute, that Adair did not respond to the questionnaire as required under regulation 161–3.12(1)(b)(1).

When a complainant fails to respond to a questionnaire, "A complaint may be administratively closed." Iowa Admin. Code r. 161–3.12(1)(c)(1). An administrative closure, unlike a "no probable cause determination," is not a final determination of the merits of the case. Iowa Admin. Code r. 161–3.12(3).

On May 20, 1999, an ICRC screening investigator completed a case determination of Adair's complaint. The analysis section stated as follows:

> ANALYSIS: Respondent [Broadlawns] provided a legitimate non-discriminatory reason for its actions supported by documentation. Ms. Adair's allegations were unsupported. She provided no evidence that her race played any role in any adverse action alleged or that she was subjected to a racially hostile work environment. Ms. Adair failed to submit a completed questionnaire to the Iowa Civil Rights Commission.
>
> As allowed by Iowa Admin. Code 161–3.12(1)c Failure to respond. (1) Complainant. A complaint may be administratively closed when Complainant fails to respond to the questionnaire.
>
> As allowed under Iowa Code section 216.16(16), this case has been screened and it has been determined that the following action will be taken:
>
> ADMINISTRATIVE CLOSURE
>
> Based on a review of the information provided by the parties as outlined above, it is determined that this complaint does not warrant further processing.

Def.'s Ex. 1. On May 22, 1996, 60 days after Adair filed her complaint, the ICRC sent her a copy of the case determination, and a letter stating that her complaint had been administratively closed.

After a complainant has filed a complaint with the ICRC in compliance with Iowa Administrative Code regulation 161–3.5, and the complaint has been on file at least 60 days, the complainant can get a right-to-sue letter from the ICRC. Iowa Admin. Code r. 161–3.10(2). An exception to this rule provides that the agency will not send a right-to-sue letter if the administrative law judge made a "no probable cause" finding. Iowa Admin. Code r. 161–3.10(4)(a).

After the ICRC closed Adair's case administratively without making a final determination of the complaint's merits, Adair requested and received a right-to-sue letter from the ICRC.

## III. DISCUSSION

Defendant asserts the Court lacks subject matter jurisdiction because in failing to complete the ICRC's questionnaire, Adair did not cooperate with the commission during its investigation of her claims, and thus she failed to exhaust her administrative remedies as required by Title VII.

Title VII prohibits unlawful employment discrimination. *See* 42 U.S.C. § 2000e–2(a)(1) (1994). But the statute also establishes an administrative procedure that a complainant must follow before filing a lawsuit in federal court. *Briley v. Carlin,* 172 F.3d 567, 571 (8th Cir.1999) (quoting *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir.1994)). An employee cannot bring a discrimination claim without first exhausting established administrative remedies. *Briley,* 172 F.3d at 571 (citing *Artis v. Francis Howell North Band Booster Ass'n,* 161 F.3d 1178, 1183 (8th Cir.1998)). "Compliance with the administrative review apparatus provided by Title VII is a requisite for judicial review of a discrimination claim." *Hargens v. U.S. Dep't of Agriculture,* 865 F.Supp. 1314, 1323 (N.D.Iowa 1994) (citations omitted); *cf. Peters v. Union Pacific R.R. Co.,* 80 F.3d 257, 262–63 (8th Cir.

1996) ("Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed") (citing *Reiter v. Cooper*, 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993)). Exhaustion of administrative remedies is necessary "because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994) (*citing Patterson v. McLean Credit Union*, 491 U.S. 164, 180–81, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)); *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401–02 (2d Cir.1993) ("the purpose of the [Title VII] exhaustion requirement ... is to give the administrative agency the opportunity to investigate, mediate, and take remedial action") (brackets and ellipses in original).

■ Courts have held that because "[f]ailure to cooperate in an EEOC investigation, no less than failure to file with the

administrative agency, serves to thwart the policy underling [sic] the enactment of Title VII, a plaintiff whose case has been dismissed by the EEOC for lack of cooperation on her part, may not bring the same Title VII claims in federal court." *McLaughlin v. State Sys. of Higher Education.*, No. CIV. A. 97–CV–1144, 1999 WL 239408, at *2 (E.D.Pa. March 31, 1999) (not reported) (internal quotation omitted).[2] *See also Dates v. Phelps Dodge Magnet Wire Co.*, 604 F.Supp. 22, 27 (N.D.Ind.1984) (holding that plaintiff could not invoke court's jurisdiction based on receipt of right-to-sue letter, because "by her own non-cooperation plaintiff made it impossible for the administrative agency to attempt to resolve her case and in this respect did not adequately exhaust her remedies"); *Holland v. The Project Return Foundation*, No. 96 Civ. 5330(PKL), 1998 WL 790935, at *2 (S.D.N.Y. Nov.13, 1998) (mem.) (not reported) (granting summary judgment to defendant because plaintiff failed to exhaust administrative remedies, in that she was not forthcoming with EEOC as to the details of her allegations; EEOC determined it could not resolve plaintiff's allegations due to her lack of cooperation); *Anderson v. Aurora*

2. Courts in the Eastern District of Pennsylvania have split concerning this issue. *Compare McLaughlin*, 1999 WL 239408, at *2, *with Melincoff v. East Norriton Physician Service, Inc.*, No. CIV. A. 97–4554, 1998 WL 254971 (E.D.Pa. April 20, 1998) (holding that plaintiff whose case EEOC dismissed for failure to cooperate was not barred from bringing Title VII claim on grounds she failed to exhaust administrative remedies). The *Melincoff* court based its holding on the fact that the Code of Federal Regulations § 1601.28(b)(3) requires the Commission to issue a right-to-sue letter when the Commission has dismissed a charge under § 1601.18 because the claimant has failed to provide requested necessary information. C.F.R. §§ 1601.28(b)(3), 1601.18(b).

The mere issuance of a right-to-sue letter, however, does not necessarily mean a claimant has exhausted her administrative remedies and satisfied a prerequisite for filing suit in federal court. *Prior v. United States Cellular Corp.*, 46 F.Supp.2d 808, 811 (N.D.Ill. 1999) ("When the plaintiff himself is at fault

for depriving EEOC of the opportunity to investigate and conciliate his charge, he cannot invoke the court's jurisdiction solely on the basis of his receipt of his right to sue.") (quoting *Duncan v. Consolidated Freightways Corp.*, No. 94 C 2507, 1995 WL 530652, at *3 (N.D.Ill.1995)). When an agency issues a right-to-sue letter after dismissing a case because the complainant's lack of cooperation with the agency's investigation efforts made it impossible for the agency to conciliate or decide the case on the merits, the procedure complies with the purpose of both 42 U.S.C. § 2000e–5(b), "to give state agencies a prior opportunity to consider discrimination complaints," and of § 2000e–5(d), "to ensure expedition in the filing and handling of those complaints," *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); and the procedure gives the plaintiff an opportunity to bring his claim to federal court if he can successfully assert the defenses of waiver or equitable estoppel, *cf. Briley*, 172 F.3d at 570 ("Title VII claims may be subject to waiver as well as tolling when equity so requires") (internal quotations omitted).

*Township,* No. 97 C 2477, 1997 WL 534265, at \*3 (N.D.Ill. Aug.20, 1997) (not reported) · (granting motion to dismiss ADEA claim, despite EEOC's issuance of right-to-sue letter, when plaintiffs frustrated state agencies' investigation of their charges by failing to cooperate and therefore failed to exhaust administrative remedies) (reversed on motion to reconsider after new facts adduced); *Duncan v. Consolidated Freightways Corp.,* No. 94 C 2507, 1995 WL 530652, at \*4 (N.D.Ill.1995) (not reported) (granting defendants' motion for summary judgment on Title VII claim; plaintiffs' admitted failure to respond to EEOC information requests deprived EEOC of opportunity to investigate and conciliate charge, plaintiff could not invoke court's jurisdiction solely on basis of receipt of right to sue); *Davis v. Mid-South Milling Co. Inc.,* No. 89–2829–TUB, 1990 WL 275945, at \*3 (W.D.Tenn. Dec.14, 1990) (not reported) (dismissing Title VII complaint for failure to exhaust administrative remedies; "It is not enough that Plaintiff takes an initial step or steps and then abandons the process.") (quoting *Jordan v. United States,* 522 F.2d 1128, 1132 (8th Cir.1975)).

The doctrine's purpose is to give the agency a chance to resolve the matter internally and avoid unnecessarily burdening the courts. *Wilson v. Pena,* 79 F.3d 154, 164 (D.C.Cir.1996).

▮ The doctrine does not apply, however, when the plaintiff's default does not prevent the agency from timely deciding the merits of the complaint. *Id.* at 165 (holding plaintiff's Title VII claim was not barred because the agency was able to, and did, take final action on merits of complaint, rendering irrelevant any purported shortcomings in information provided by claimant; court could not dismiss suit solely for any default in responding to agency's information request); *see Zugay v. Progressive Care,* 180 F.3d 901, 902–03 (7th Cir.1999) (holding that plaintiff's withdrawal of her state agency charge before date set for fact-finding conference was not failure to exhaust administrative reme-

dies under Title VII, when she cooperated with agency for more than mandated 60–day period after filing charge; plaintiff was free to file suit in federal court when she received right-to-sue letter from EEOC); *Burton v. Great Western Steel Co.,* 833 F.Supp. 1266, 1272–73 (N.D.Ill. 1993) (denying motions to dismiss and for summary judgment based on plaintiff's failure to exhaust administrative remedies because he did not cooperate with state human rights agency's investigation of his claim, when agency did not try to contact claimant until 18 months after he filed state charge, and six months after he timely filed federal suit in accord with right-to-sue letter); *Sedlacek v. Hach,* 752 F.2d 333, 334–35 (8th Cir.1985) (reversing dismissal; holding district court had subject matter jurisdiction of Title VII claim, when ICRC and EEOC dismissed the plaintiff's sex discrimination charge after both agencies failed to investigate the merits or attempt to conciliate, because the agencies erroneously determined the defendant did not have a sufficient number of employees to be subject to Title VII; neither agency requested the plaintiff's cooperation in investigating her claim;. "[t]he action or inaction of the EEOC and its failure to attempt conciliation cannot affect a complainant's ·substantive rights under Title VII").

Adair argues that she exhausted her administrative remedies, even though she did not cooperate with the ICRC's investigation, in that she filed a timely complaint with the ICRC, and she received a right-to-sue letter from the ICRC. Adair relies on two cases: *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Sedlacek,* 752 F.2d 333. Both cases, however, are inapposite to the present case. In *McDonnell Douglas,* the Commission made findings of reasonable cause as to the failure-to-hire claim, but not as to the racial-bias claim, in the plaintiff's Title VII complaint, and the Commission unsuccessfully attempted to conciliate the dispute. *McDonnell Douglas,* 411 U.S. at 797, 93 S.Ct. 1817. The

district court erred in dismissing the racial-bias claim, the Court held, because the plaintiff had satisfied the jurisdictional prerequisites by (1) filing timely charges of employment discrimination with the Commission and by (2) receiving and acting on the Commission's statutory notice of the right to sue. *Id.* at 798, 93 S.Ct. 1817. Title VII "does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of reasonable cause." *Id.* Here, the issue is not the absence of a "reasonable cause" determination, but rather Adair's actions in depriving the ICRC of its opportunity to investigate the claim. In *Sedlacek,* unlike in this case, the plaintiff's actions did not impede the agencies in performing their duties, because the ICRC and the EEOC did not attempt to investigate or conciliate her Title VII sex discrimination charge. *Sedlacek,* 752 F.2d at 334–35.

The material facts concerning Adair's filing of the ICRC complaint and failure to answer the questionnaire are simple and undisputed. The ICRC attempted to investigate Adair's complaint when it sent the parties questionnaires. Adair, however, failed to answer the questionnaire or to submit a written statement, as required by the agency. The ICRC's analysis and administrative closure in the case determination of Adair's case, and its issuance of a right-to-sue letter, did not constitute a decision on the merits of her complaint. *See* Iowa Admin. Code r. 161–3.12(3); *Ritz v. Wapello Co. Bd. of Supervisors,* 595 N.W.2d 786, 792 (Iowa 1999) (holding that screening analysis and administrative closure under regulation 3.12, in connection with right-to-sue letter, merely certified that conditions precedent in regulation 3.10(2) were satisfied and none of the right-to-sue exceptions applied; analysis did not certify factual aspects of case or applications of law to facts, beyond standards enumerated for issuance of right-to-sue letter). Having before it only Adair's complaint and Broadlawn's evidence, the ICRC reasonably concluded that it could not decide the matter on the merits and issue a probable-cause finding.

Adair does not explain her failure to cooperate with the ICRC. In her resistance to the present Motion, she offers no affirmative defense of waiver or equitable estoppel. By refusing to cooperate with the ICRC, Adair received a dismissal and a right-to-sue letter, which she could not have received if an administrative law judge had made a "no probable cause" finding. *See* Iowa Admin. Code r. 161–3.10(2). In refusing to cooperate with the ICRC, Adair impeded the commission's ability to resolve the matter internally and avoid unnecessary burdening of the courts. Although Adair took the initial step in exhausting her administrative remedies, she in effect abandoned the process, thus failing to satisfy the requirement to exhaust administrative remedies. *See Jordan,* 522 F.2d at 1132.

No material questions of fact exist concerning whether Adair failed to answer the ICRC questionnaire or otherwise cooperate with the ICRC, whether her default prevented the ICRC from deciding the complaint's merits, and whether the ICRC dismissed Adair's complaint for lack of her cooperation. Based on the summary judgment record, the Court holds as a matter of law that Adair did not exhaust her administrative remedies. The Court therefore must dismiss all her claims. Because of its holding, the Court does not address the remaining issues raised in Broadlawns' Motion for Summary Judgment.

## IV. RULING AND ORDER

For the reasons discussed above, the Court holds that Adair did not exhaust her administrative remedies, and the Court therefore may not review the merits of her claims. The Court **grants** Defendant's Motion for Summary Judgment (Clerk's No. 35). Plaintiff's claims against Defendant are dismissed without prejudice.

**IT IS SO ORDERED.**