T.C. Memo. 2003-240


UNITED STATES TAX COURT


SANDRA G. VENABLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10888-02.          Filed August 13, 2003.


     On Aug. 26, 1994, P filed a malicious prosecution
lawsuit in Texas against a former business associate.
After trial to a jury, P was awarded a favorable
verdict and judgment in August of 1996.  A State
appellate court affirmed, and the Texas Supreme Court
denied review in 1998.  The former business associate
then satisfied the judgment by means of a check dated
Oct. 29, 1998.

     <u>Held</u>:  Sec. 104, I.R.C., as amended by the Small
Business Job Protection Act of 1996, Pub. L. 104-188,
sec. 1605, 110 Stat. 1838, is applicable to determine
excludability from gross income of the damages P
received.

     <u>Held</u>, <u>further</u>, the payment P received pursuant to
the malicious prosecution lawsuit is not excludable
from gross income for 1998 under sec. 104, I.R.C.
There is no evidence that any of the judgment award was
received on account of a personal physical injury or
physical sickness as required by sec. 104(a)(2),

I.R.C., or for medical care attributable to emotional distress as required by the flush language of sec. 104(a), I.R.C.

Hans I. Lindberg, for petitioner.

Gerald L. Brantley, for respondent.

## MEMORANDUM OPINION

WHERRY, Judge: Respondent determined a Federal income tax deficiency for petitioner's 1998 taxable year of $157,357. Respondent also determined an accuracy-related penalty under section 6662(a) of $31,471 for 1998. After concessions, the issue for decision is whether damages petitioner received in satisfaction of a lawsuit judgment are includable in her gross income for 1998.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

### Background

This case was submitted fully stipulated pursuant to Rule 122. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed in this case, petitioner resided in The Woodlands, Texas.

In the mid-1980s, petitioner and her then husband, Victor Hubbard (Mr. Hubbard), now deceased, were involved in the operation of a software development company.  They were introduced to Terry Thrift, Jr. (Mr. Thrift), who agreed to invest in the venture.  Subsequently, the financial condition and business prospects of the company, as well as the relationship of petitioner and Mr. Hubbard with Mr. Thrift, deteriorated. Mr. Thrift thereafter filed a complaint against petitioner and Mr. Hubbard with the District Attorney's Office for Bexar County, Texas, alleging, inter alia, theft of accounts receivable.  In response to this complaint, the District Attorney's Office instituted a criminal prosecution.  On December 6, 1993, the Assistant District Attorney assigned to the criminal case filed a motion to dismiss.

On August 26, 1994, petitioner sued Mr. Thrift for malicious prosecution in the 224th Judicial District, Bexar County, Texas. Petitioner entered into a contingency fee contract with Attorney Darby Riley (Mr. Riley) to represent her as plaintiff in this lawsuit.  The case was tried to a jury, and petitioner was awarded a favorable verdict on August 16, 1996, in the amount of $437,300, as follows:

| | |
|---|---|
| Loss of earning capacity | $9,800 |
| Attorney's fees to defend criminal charges | 2,500 |
| Mental anguish | 150,000 |
| Loss to reputation | 275,000 |
| Total | 437,300 |

The trial court signed a judgment on August 26, 1996, in the amount of $524,760, which included the damages determined by the jury and prejudgment interest.

Thereafter, Mr. Thrift posted a supersedeas bond and appealed to the Court of Appeals, Fourth District, San Antonio, Texas.  On February 25, 1998, the appellate court delivered and filed its opinion affirming the judgment of the trial court. Thrift v. Hubbard, 974 S.W.2d 70 (Tex. App. 1998).  A motion for rehearing filed by Mr. Thrift was denied on May 6, 1998.  Mr. Thrift then filed a petition for review with the Texas Supreme Court, which was denied on October 15, 1998.

By means of a cashier's check dated October 29, 1998, and made payable to petitioner and her attorney, Mr. Thrift remitted $641,984.63 in satisfaction of the judgment.  From this sum, petitioner received a direct payment of $317,824.94 in net proceeds.  That amount represented petitioner's 50-percent share of the recovery after deduction of $2,417.38 in expenses paid by her attorney and $750 in expert witness's fees.  Mr. Riley received a corresponding $320,992.31.

On May 12, 1999, petitioner signed a Form 1040, U.S. Individual Tax Return, for 1998.  The return was received by the Internal Revenue Service on May 16, 1999.  Therein, petitioner reported as income "lawsuit proceeds" of $107,424.83.  She did

not deduct, as an itemized deduction, any expenses related to the malicious prosecution lawsuit.

Respondent on March 27, 2002, issued to petitioner a notice of deficiency. In calculating the subject tax deficiency of $157,357, respondent included in petitioner's gross income the full amount of the lawsuit settlement proceeds and treated the attorney's fees and other expenses incurred in connection therewith as a miscellaneous itemized deduction. Respondent further determined that petitioner was liable for the section 6662(a) accuracy-related penalty in the amount of $31,471 on account of negligence or disregard of rules and regulations.

After the instant case was commenced, the parties submitted stipulations of settled issues addressing certain of the adjustments made in the notice of deficiency. As regards the itemized deductions, specifically the contingent attorney's fees paid directly to Mr. Riley, the parties stipulated:

> In the Notice of Deficiency, Respondent allowed Petitioner's contingent attorney's fees as an itemized deduction. Venue for appeal lies to the Court of Appeals for the Fifth Circuit. The parties agree that Petitioner's gross income from the damage award does not include the portion of the award paid directly to her attorney, and Petitioner is not entitled to an itemized deduction for the attorney's fees paid to her attorney. See Srivastava v. Commissioner, 220 F.3d 353, 365 (5th Cir. 2000), rev'g and remanding in part, and aff'g on another issue, T.C. Memo. 1998-362.

Concerning the penalty, their stipulation reads:

> The parties agree that if it is determined that there is an underpayment of Petitioner's 1998 income

tax attributable to the amount of gross income Petitioner received from the lawsuit recovery, the accuracy related penalty provided in I.R.C. § 6662(a) and (c) shall be computed. The amount of the penalty imposed and assessed will be reduced by 50% from the amount computed.

## Discussion

### I. General Rules

As a general rule, the Internal Revenue Code imposes a Federal tax on the taxable income of every individual. Sec. 1. Section 61(a) specifies that, "Except as otherwise provided", gross income for purposes of calculating such taxable income means "all income from whatever source derived". The compass of this definition is broad, typically reaching any accretions to wealth. Commissioner v. Schleier, 515 U.S. 323, 327 (1995); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-431 (1955).

Section 104, in contrast, provides otherwise with respect to compensation for injuries or sickness. Such exclusions from gross income are construed narrowly. Commissioner v. Schleier, supra at 328; United States v. Burke, 504 U.S. 229, 248 (1992) (Souter, J., concurring in judgment). Before its amendment on August 20, 1996, by the Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104-188, sec. 1605, 110 Stat. 1838, section 104 read in pertinent part as follows:

SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.

(a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc.,

expenses) for any prior taxable year, gross income does
not include--

       \*      \*      \*      \*      \*      \*      \*

     (2) the amount of any damages received
(whether by suit or agreement and whether as lump
sums or as periodic payments) on account of
personal injuries or sickness;

The reference to personal injuries in this former version of the
statute did not include purely economic injuries but did embrace
"nonphysical injuries to the individual, such as those affecting
emotions, reputation, or character".  United States v. Burke,
supra at 235 n.6, 239; see also Commissioner v. Schleier, supra
at 329-331.

The SBJPA then amended section 104, as relevant here, to
provide:

SEC. 104.  COMPENSATION FOR INJURIES OR SICKNESS.

    (a) In General.--Except in the case of amounts
attributable to (and not in excess of) deductions
allowed under section 213 (relating to medical, etc.,
expenses) for any prior taxable year, gross income does
not include--

       \*      \*      \*      \*      \*      \*      \*

     (2) the amount of any damages (other than
punitive damages) received (whether by suit or
agreement and whether as lump sums or as periodic
payments) on account of personal physical injuries
or physical sickness;

       \*      \*      \*      \*      \*      \*      \*

\* \* \* For purposes of paragraph (2), emotional distress
shall not be treated as a physical injury or physical
sickness.  The preceding sentence shall not apply to an

amount of damages not in excess of the amount paid for medical care * * * attributable to emotional distress.

Legislative history accompanying passage of the SBJPA additionally clarifies that "the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.

Regulations promulgated under section 104 further define "damages received (whether by suit or agreement)" as "an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs.

For purposes of applying the above statutory and regulatory text in effect prior to the SBJPA, the U.S. Supreme Court in Commissioner v. Schleier, supra at 336-337, established a two-pronged test for ascertaining a taxpayer's eligibility for the section 104(a)(2) exclusion. As stated by the Supreme Court: "First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights'; and second, the taxpayer must show that the damages were received 'on account of personal injuries or sickness.'" Id. at 337. This test has since been extended to apply to the amended version of section 104, with the corresponding change that the second prong now requires proof that the personal

injuries or sickness for which the damages were received were physical in nature.  Shaltz v. Commissioner, T.C. Memo. 2003-173; Henderson v. Commissioner, T.C. Memo. 2003-168; Prasil v. Commissioner, T.C. Memo. 2003-100.

II.  Contentions of the Parties

The dispute between the parties in this case turns in large part upon which version of section 104 is applicable to petitioner's situation.  Petitioner contends that the statute as it existed before amendment by the SBJPA controls.  Specifically, petitioner alleges that to consider her case under the amended section 104 would inappropriately give the law retroactive effect, in violation of the standard set forth by the U.S. Supreme Court in Landgraf v. USI Film Prods., 511 U.S. 244 (1994).  Further, it is petitioner's position that the majority of the damages she received, in particular those for mental anguish and loss to reputation, are properly excluded from gross income pursuant to the law in effect when she filed her tort cause of action in 1994.

Conversely, respondent maintains that the amended version of section 104, requiring proof of physical injuries or sickness, is applicable here.  Respondent argues that because petitioner is a cash basis taxpayer and received the payment in question after the effective date of the SBJPA, excludability of the damages is governed by the revised statute.  Respondent then asserts that

none of the amounts petitioner received were to compensate for physical injuries or sickness.

The Court concludes, for the reasons explained below, that section 104 as amended by the SBJPA is applicable to the instant case. Further, petitioner is not entitled to the exclusion afforded by section 104. The payment petitioner received pursuant to the malicious prosecution lawsuit is therefore subject to taxation under the default rule of section 61(a).

III. Analysis

A. Applicable Law

At the outset, we note that petitioner's arguments regarding retroactivity are premised on her contention that the relevant conduct occurred in August of 1994 with the filing of the malicious prosecution lawsuit. Respondent, in contrast, focuses on 1998 when the judgment became final and petitioner received the payment in question. For the sake of completeness and because we conclude, under these facts, that application of the amended section 104 would not run afoul of the standards typically employed to evaluate retroactive legislation, we discuss section 104 under those standards, including the test for retroactivity advocated by petitioner.[1]

---

[1] We note, however, that the amendment to sec. 104 is not in fact a "retroactive" statute, in that the effective date provision, quoted infra p. 12, was prospective only from the date of enactment.

Our conclusion that application of the amended version of section 104 is permissible rests on two principal considerations. First, to the extent that the test of Landgraf v. USI Film Prods., supra, is pertinent in the context of tax legislation, a point we do not reach, the rubric set forth therein supports application of the revised statute. Second, application of amended section 104 is likewise consistent with the standard for retroactivity of tax laws expressly described in United States v. Carlton, 512 U.S. 26 (1994).

In Landgraf v. USI Film Prods., supra at 280, the Supreme Court stated the following rule:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Hence, the threshold question is whether Congress expressly provided that the disputed statute should apply retroactively or prospectively. In the words of the Court of Appeals for the Fifth Circuit, to which appeal in the instant case would normally lie, "we must first determine whether Congress has clearly

prescribed the temporal reach" of the section, and, "If Congress has clearly expressed whether the statute should apply retroactively, the inquiry ends." Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 297 (5th Cir. 2002). For purposes of finding such an unambiguous direction, the Supreme Court has further explained: "'[C]ases where this Court has found truly "retroactive" effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation.'" INS v. St. Cyr, 533 U.S. 289, 316-317 (2001) (quoting Lindh v. Murphy, 521 U.S. 320, 328 n.4 (1997)).

SBJPA section 1605, after setting forth in subsections (a) through (c) the amending language to be codified as part of section 104, provided as follows:

(d) Effective Date.--

(1) In general.--Except as provided in paragraph (2), the amendments made by this section shall apply to amounts received after the date of the enactment of this Act, in taxable years ending after such date.

(2) Exception.--The amendments made by this section shall not apply to any amount received under a written binding agreement, court decree, or mediation award in effect on (or issued on or before) September 13, 1995.

While the Supreme Court has indicated that "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date", Landgraf v. USI Film Prods., supra

at 257, the above text constitutes markedly more than "the mere promulgation of an effective date", INS v. St. Cyr, supra at 317. SBJPA section 1605(d)(1) does not just state when the law is to take effect. Rather, the provision explicitly dictates the particular conduct and the timing thereof to which the amendments "shall apply". According to the express text, receipt of payments after the August 20, 1996, date of enactment falls within the intended scope of the amended version of section 104, unless the explicit exception for a prior binding agreement, court decree, or mediation award is applicable.

Here, the jury verdict in petitioner's favor was not returned until August 16, 1996, and the appellate process was not completed until the Texas Supreme Court denied review on October 15, 1998. Petitioner's situation therefore fails to satisfy the requisites for relief under SBJPA section 1605(d)(2). In such event, SBJPA section 1605(d)(1) explicitly and unambiguously prescribes the temporal reach of the section 104 amendments to the situation at hand. We conclude that Landgraf v. USI Film Prods., 511 U.S. 244 (1994), would pose no barrier here to application of the revised section 104.

Moreover, less than 2 months after issuing its decision in Landgraf, and without reference thereto, the Supreme Court decided United States v. Carlton, supra. The issue in United States v. Carlton, supra at 27, was the propriety of retroactive

application of an amendment made to a Federal estate tax statute.

In that context, the Supreme Court explained as follows:

> This Court repeatedly has upheld retroactive tax legislation against a due process challenge.  Some of its decisions have stated that the validity of a retroactive tax provision under the Due Process Clause depends upon whether retroactive application is so harsh and oppressive as to transgress the constitutional limitation.  The harsh and oppressive formulation, however, does not differ from the prohibition against arbitrary and irrational legislation that applies generally to enactments in the sphere of economic policy.  The due process standard to be applied to tax statutes with retroactive effect, therefore, is the same as that generally applicable to retroactive economic legislation: * * * that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.  [Id. at 30-31; internal quotations and citations omitted.]

The Supreme Court further noted:

> "Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract.  It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens.  Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process * * * "  [Id. at 33 (quoting Welch v. Henry, 305 U.S. 134, 146-147 (1938)).]

In general, the raising of Government revenue is considered a sufficient and legitimate legislative purpose for supporting a "modest" period of retroactivity.  Id. at 32-33; id. at 37 (O'Connor, J., concurring in judgment); NationsBank v. United States, 269 F.3d 1332, 1337-1338 (Fed. Cir. 2002); Quarty v. United States, 170 F.3d 961, 967 (9th Cir. 1999); Furlong v. Commissioner, 36 F.3d 25, 27-28 (7th Cir. 1994), affg. T.C. Memo.

1993-191.  The principal exception to this reasoning discernible from caselaw arises in scenarios involving imposition of a "wholly new tax".  See <u>United States v. Carlton</u>, 512 U.S. at 34; <u>Quarty v. United States</u>, <u>supra</u> at 966-967; <u>Furlong v. Commissioner</u>, <u>supra</u> at 27; <u>Wiggins v. Commissioner</u>, 904 F.2d 311, 314 (5th Cir. 1990), affg. 92 T.C. 869 (1989).

The imposition of a wholly new tax is to be distinguished from changes in the rate of an existing tax.  <u>United States v. Darusmont</u>, 449 U.S. 292, 298-300 (1981); <u>Quarty v. United States</u>, <u>supra</u> at 966-967; <u>Honeywell, Inc. v. United States</u>, 973 F.2d 638, 642-643 (8th Cir. 1992); <u>Estate of Ekins v. Commissioner</u>, 797 F.2d 481, 484-485 (7th Cir. 1986); <u>Fein v. United States</u>, 730 F.2d 1211, 1212-1214 (8th Cir. 1984); <u>Estate of Ceppi v. Commissioner</u>, 698 F.2d 17, 20-21 (1st Cir. 1983), affg. 78 T.C. 320 (1982).  Furthermore, amendments which eliminate an exemption, exclusion, or tax credit have repeatedly been construed as "'closer in kind and in effect to a mere increase in the tax rate than to the enactment of a wholly new tax.'" <u>Honeywell, Inc. v. United States</u>, <u>supra</u> at 642-643 (quoting <u>Fein v. United States</u>, <u>supra</u> at 1213); see also <u>Estate of Ekins v. Commissioner</u>, <u>supra</u> at 484-485; <u>Estate of Ceppi v. Commissioner</u>, <u>supra</u> at 17, 21.

Turning to the case at bar, the amendment to section 104 restricted the availability of an exclusion from gross income.

In such instance, retroactivity would not be constitutionally objectionable on grounds related to a wholly new tax. Accordingly, petitioner's situation does not present reason for departure from the lenient standards typically employed to evaluate tax legislation.

As regards legitimate governmental purpose, the legislative history accompanying the SBJPA notes that "Courts have interpreted the exclusion from gross income of damages received on account of personal injury or sickness broadly in some cases to cover awards for personal injury that do not relate to a physical injury or sickness."  H. Conf. Rept. 104-737, supra at 300, 1996-3 C.B. at 1040.  Congress's choice to narrow the exclusion, and any retroactive application of the change, would therefore appear to be rationally linked to the legitimate objective of raising revenue.  Legislative history further reveals that the change was intended as a curative measure designed to reduce or eliminate ambiguity in the otherwise applicable law.  Reference is made to "confusion" that "led to substantial litigation", including the Supreme Court cases of Commissioner v. Schleier, 515 U.S. 323 (1995), and United States v. Burke, 504 U.S. 229 (1992).  H. Rept. 104-586, at 143 (1996), 1996-3 C.B. 331, 481.

In addition, the period of "retroactivity" alleged by petitioner in this case, i.e., slightly less than 2 years, does

not exceed what has been upheld in other tax litigation. See, e.g., <u>Licari v. Commissioner</u>, 946 F.2d 690 (9th Cir. 1991) (upholding application of tax penalty passed in 1986 to returns previously filed for years 1982 through 1984), affg. T.C. Memo. 1990-4; <u>Canisius Coll. v. United States</u>, 799 F.2d 18, 26-27 (2d Cir. 1986) (upholding 4-year retroactive application); <u>Temple Univ. v. United States</u>, 769 F.2d 126 (3d Cir. 1985) (upholding at least a 4-year retroactive application); <u>Rocanova v. United States</u>, 955 F. Supp. 27 (S.D.N.Y. 1996) (upholding retroactive application of amendment extending statute of limitation on tax collection actions from 6 to 10 years), affd. 109 F.3d 127 (2d Cir. 1997). As the Court of Appeals for the Fifth Circuit has observed: "The Supreme Court has never explicitly imposed a time limit on the retroactivity of a tax statute's application." <u>Wiggins v. Commissioner</u>, <u>supra</u> at 316. Accordingly, the Court of Appeals for the Fifth Circuit has further opined that "the 'harsh and oppressive' test * * * does not limit retroactivity to one year, but instead requires a case-by-case analysis in which the length of the period affected is but one factor to be considered." <u>Id.</u>

To summarize, we conclude that, to the extent petitioner raises issues of retroactivity, application of the amendment to section 104 would not violate the standards requiring a rational purpose and reasonable period. The tests employed to evaluate

retroactive legislation therefore do not justify refusal to apply the law in effect for the tax year under consideration.

    B.  Application of Section 104 as Amended

    As indicated above, the first requirement for the section 104(a)(2) exclusion is that the claim underlying the funds received must be based on tort or tort type rights.  Commissioner v. Schleier, supra at 337.  A tort is defined as a "'civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages.'"  United States v. Burke, supra at 234 (quoting Keeton et al., Prosser & Keeton on the Law of Torts 2 (1984)).  State law typically determines the nature of the legal interests involved.  Bland v. Commissioner, T.C. Memo. 2000-98; Massot v. Commissioner, T.C. Memo. 2000-24. Here, the parties do not dispute that petitioner's malicious prosecution lawsuit sounded in tort under Texas law.

    The second requirement for exclusion under section 104 as amended demands that the damages be received on account of personal physical injuries or physical sickness.  Prasil v. Commissioner, T.C. Memo. 2003-100.  Petitioner's award comprised amounts for loss of earning capacity, for attorney's fees to defend criminal charges, for mental anguish, and for loss to reputation.  None of these categories is based on a physical injury or sickness.  The amended version of the statute provides that emotional distress is not a physical injury or physical

sickness, except to the limited extent of allowing an exclusion for damages up to the amount paid for medical care necessitated by emotional distress. Petitioner is unable to take advantage even of this limited exception because there is no evidence of how much, if anything, she spent to obtain medical care. Thus, the Court holds that petitioner is not entitled under section 104 to exclude from income any portion of the payment she received pursuant to the malicious prosecution lawsuit.

To reflect the foregoing and concessions by the parties, which, inter alia and as noted previously, resolved the section 6662(a) penalty issue,

<u>Decision will be entered</u>

<u>under Rule 155</u>.